Charles MUSTO

v.

**UNITED STATES of America, Appellant.**

No. 77–1239.

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1977.

Decided Feb. 8, 1978.

As Amended March 15, 1978.

Jonathan L. Goldstein, U. S. Atty., John J. Barry and Maryanne T. Desmond, Asst. U. S. Attys., Newark, N. J., for appellant.

Jeffrey D. Ilardi, Krivit, Miller & Galdieri, Jersey City, N. J., for appellee.

Before ROSENN and VAN DUSEN, Circuit Judges, and COHILL, District Judge.[*]

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The United States appeals from the district court's grant of a prisoner's motion, brought under 28 U.S.C. § 2255 (1970), for correction of a sentence entered under 18 U.S.C. § 4208(a)(2) (1970).[1] The court held that its intent, as the sentencing judge, to afford the prisoner an early opportunity for release, was frustrated by the application of the 1973 Parole Policy Guidelines, 28 C.F.R. § 2.20 (1976)[2] and that the prisoner's motion should be granted. In *United States v. Salerno (Appeal of William Silverman) (Silverman I)*, 538 F.2d 1005 (3d Cir.), *aff'd per curiam sur petition for rehearing*, 542 F.2d 628 (3d Cir. 1976) (*Silverman II*), this court held that 28 U.S.C. § 2255 vests a sentencing court with jurisdiction to correct a sentence whose import has been changed by new Parole Policy Guidelines adopted subsequent to the imposition of sentence. In *United States v. Somers*, 552 F.2d 108 (3d Cir. 1977) (*Appeal of Ponzio*), this court reaffirmed the narrow holdings of *Silverman I* and *II* but cautioned that the "*Silverman* doctrine is a most narrow and inelastic principle which will not be expanded beyond its strict confines." *Id.* at 114. In this appeal we face the question of whether

28 U.S.C. § 2255 vests a district court with jurisdiction to correct its initial sentence when that sentence was entered by the sentencing court with knowledge of the existence of the Parole Policy Guidelines.

We hold that a sentencing court exceeds its jurisdictional authority under 28 U.S.C. § 2255 if it alters a sentence entered under a misapprehension of the parole consequences of the sentence when the sentencing judge had knowledge of the existence of the Parole Policy Guidelines in force at the time of the sentencing. *Silverman I* and *II* and *Ponzio* authorize modification of sentence on a § 2255 motion only where the sentencing judge's expressed intent at or before the sentencing was thwarted by the adoption of comprehensive new parole policies promulgated by the Parole Board[3] subsequent to the original imposition of sentence.

I.

Charles Musto was convicted in the United States District Court for the District of New Jersey on February 24, 1975, of multiple counts of extortionate extensions of credit, in violation of 18 U.S.C. § 892 (1970), the use of extortionate means to collect extensions of credit, in violation of 18 U.S.C. § 894 (1970), and willful use of force and threats to obstruct an FBI investigation, in violation of 18 U.S.C. § 1510 (1970). The trial judge sentenced Musto on June 10, 1975, pursuant to 18 U.S.C. § 4208(a)(2), to three years' imprisonment on one count of his conviction and concurrent three-year terms on the other four counts. Musto

---

[*] Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

[1] The Parole Commission and Reorganization Act, Pub.L.No. 94–233, 90 Stat. 219, effective May 14, 1976, recodified § 4208(a)(2) intact at 18 U.S.C.A. § 4205(b)(2) (West Supp.1977). For the sake of convenience, we shall refer to this and other sentencing provisions as codified at the time of sentencing.

[2] The Parole Policy Guidelines were initially promulgated on November 19, 1973, 38 Fed. Reg. 31942, and, after a court invalidated them

for having been improperly adopted, *Pickus v. United States Bd. of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), were reissued as emergency regulations, 39 Fed.Reg. 45223 (Dec. 31, 1974).

[3] The Parole Commission and Reorganization Act, *supra* note 1, transferred the Parole Board's authority to the newly created United States Parole Commission, 18 U.S.C.A. § 4202 (West Supp.1977). Again, for the sake of convenience, we shall refer to the former appellation.

commenced serving his sentence in the Allenwood Federal Prison Camp on June 24, 1975. No appeal was taken from his conviction, although Musto timely filed a motion under Rule 35, Fed.R.Crim.P., for reduction of sentence, which was denied.

After an initial hearing, the Parole Board ruled on August 25, 1975, that application of its Parole Policy Guidelines indicated imprisonment for a period of 26–36 months. Musto's application for parole was reconsidered prior to the one-third point of his sentence and the Board ruled on June 17, 1976, that an earlier release date than that indicated by the Guidelines was not warranted. On November 18, 1976, Musto filed with his sentencing court a motion to correct sentence under 28 U.S.C. § 2255 (1970). The original sentencing judge conducted a hearing on December 1, 1976, and thereafter resentenced Musto on all counts to time already served.

We are concerned in this case, as we were in *Silverman* and *Ponzio*, with the impact of the Parole Policy Guidelines on sentences imposed under 18 U.S.C. § 4208(a)(2). Sentencing judges have had three options in specifying an eligibility date for parole when imposing sentence. A "straight" sentence under 18 U.S.C. § 4202 (recodified at 18 U.S.C.A. § 4205(a) (West Supp.1977)) leaves the prisoner eligible for parole after serving one-third of his sentence. A judge may designate a maximum term and a minimum term less than one-third of the maximum sentence under 18 U.S.C. § 4208(a)(1) (recodified at 18 U.S.C.A. § 4205(b)(1) (West Supp.1977)). Alternatively, the district court could impose a maximum term and no minimum term and specify "that the prisoner may become eligible for parole at such time as the board of parole may determine." 18 U.S.C. § 4208(a)(2).

Eligibility for parole has never, of course, meant entitlement to release. Prior to the adoption of its new Guidelines, the Parole Board decided individual parole applications primarily on the basis of the prisoner's institutional behavior and the likelihood of reentry into society without risk of recidivism. *See* 18 U.S.C. § 4203 (1970) (current version at 18 U.S.C.A. § 4206 (West Supp. 1977)); 28 C.F.R. § 2.2 (1973); *Silverman I, supra,* 538 F.2d at 1007. Thus, a § 4208(a)(2) sentence afforded a prisoner who demonstrated successful rehabilitation an opportunity for early release, prior to the expiration of his term.

In November 1973, the Parole Board promulgated its new Guidelines applicable to all prisoners, whether sentenced under § 4202, § 4208(a)(1) or § 4208(a)(2), for the purpose of standardizing parole decisions and making more uniform the periods of incarceration for similar offenses.[4] *See* 28 C.F.R. § 2.20 (1976). In applying these Guidelines, parole officials refer to published tables which objectively rank the severity of offense and prognosis for recidivism (the so-called salient factor score). Combining these scores yields a predicted range of time that an offender should serve before being paroled. *Id.* Because the parole authorities observe these guidelines in almost all cases, *see Silverman I,* 538 F.2d at 1007, a § 4208(a)(2) sentence no longer affords a prisoner the opportunity for early release on the basis of his institutional behavior and his readiness to live within the law upon release.[5]

In *Silverman I,* this court determined that application of the Guidelines to a

---

4. In the Parole Commission and Reorganization Act, *supra* note 1, Congress prescribed parole determination criteria by borrowing almost entirely the precise language of § 2.18 of the Guidelines (28 C.F.R. § 2.18). *Compare* 18 U.S. C.A. § 4206 (West Supp.1977) *with* 28 C.F.R. § 2.18 (1976). In particular, Congress authorized consideration, in parole decisions, of the depreciation of the severity of an offense, a factor not authorized in the superseded statute. *Compare* 18 U.S.C.A. § 4206 (West Supp.1977) *with* 18 U.S.C. § 4203 (1970).

5. Musto's indicated term of sentence from application of the Guidelines was 26–36 months. However, with earned good time credits, Mr. Musto's projected mandatory release date, independent of parole, was July 6, 1977, resulting in less than 25 months' incarceration (affidavit of parole officer, 40a). Thus, application of the Parole Guidelines precluded Musto's realistic opportunity for release on parole.

§ 4208(a)(2) prisoner sentenced prior to their adoption frustrated the sentencing judge's explicit expectation that the prisoner would be considered for parole only on the basis of institutional behavior and rehabilitation progress. 538 F.2d at 1008–09. This court held that such frustration rendered the sentence as imposed "subject to collateral attack" and therefore a proper subject of a motion under 28 U.S.C. § 2255 (1970). *Id.* at 1008 & n. 4. In *Silverman II, supra,* the same panel of this court emphasized that the sentencing judge's explicit intent, which could not have reflected the Guidelines' deemphasis of institutional behavior, was crucial. In denying rehearing, the panel pointed out that its earlier decision did not vest sentencing courts with the authority to override parole board decisions. Rather, the court carefully framed a narrow holding quoting this language from a decision of the Eighth Circuit Court of Appeals:

"Our decision does, however, 'permit the district court to correct a sentencing error where the import of the judge's sentence has in fact been changed by guidelines adopted by the Parole Board . . . subsequent to the imposition of that sentence.' *United States v. White,* 540 F.2d 409, at 411 (8th Cir. 1976)."

In *Ponzio, supra,* the prisoner had likewise been sentenced six months prior to promulgation of the Guidelines and the sentencing judge determined that application of the Guidelines thwarted his express intent in imposing a § 4208(a)(2) sentence. 552 F.2d at 112–13. *Ponzio* also reaffirmed this court's holding that the resentencing judge properly exercised jurisdictional authority under § 2255. *Id.* at 113 n. 9.

■ The district court record of the sentencing proceedings in this case substantially differs from the records before this court in *Silverman* and *Ponzio.* Here the sentencing judge imposed the § 4208(a)(2) sentence 18 months after adoption of the Guidelines. In fact, the sentencing judge candidly acknowledged the existence of the Guidelines:

"I'm going to impose this sentence under 4208(a)(2). I point out for the record that I do so with a knowledge of the parole guidelines. I state that in view of the *Slutsky* case, which came down recently in the Second Circuit [*United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975)]. I say that for the record." [6]

(N.T. 17 of sentencing proceedings of June 10, 1975, reprinted at 25a).

Thus, whatever frustration the sentencing judge experienced from subsequent application of the Guidelines was largely anticipatory.[7] However, the sentencing judge recollected that he did not expect the Guidelines to be applied in Musto's particular case, where "everything was in his favor except this determination that an early release would deprecate the severity of his sentence" (N.T. 13 of proceeding of December 1, 1976, reprinted at 58a).

While the sentencing judge may not have expected the uniform application of the Guidelines in all § 4208(a)(2) sentences, the thwarting of such an expectation is of a different kind from that which occurred in *Silverman* and *Ponzio.* In these latter cases the sentencing judge's expectations were based on governing policies which were substantially altered by the promulgation of

---

**6.** In *United States v. Slutsky, supra,* the court of appeals was not reviewing a denial of a § 2255 motion for correction of sentence but, instead, had before it a district court's refusal to reduce a § 4208(a)(2) sentence upon a timely Rule 35 motion. The *Slutsky* court reversed the district court's denial of a Rule 35 motion because it found that the district court "could hardly have been aware" of the Guidelines which had been adopted prior to sentencing but which had not been publicized in the circuit until after disposition of the particular Rule 35 motion. *See* 514 F.2d at 1227. Musto's sentencing judge, on the other hand, was clearly aware of the Guidelines at the time he imposed sentence.

**7.** During the § 2255 proceedings, the sentencing judge, in retrospect, confirmed his knowledge of the Guidelines (N.T. 7 of proceedings of December 1, 1976, reprinted at 52a) and restated his disagreement with the Guidelines: "parole consideration should not be founded on . . . [whether] an early release would deprecate the severity of his offense" (*id.* at 7–8, 52a–53a). *See also id.* at 11–12, 56a–57a.

the generally applicable Guidelines. In Musto's case, the existence of the new generally applicable rules was known to the sentencing judge, who misapprehended their effect in a particular case. Once parole guidelines are in force and known to the bench and bar, challenges as to their impact on particular sentences are more in the nature of challenges to the execution of parole policies and to the exercise of discretion by parole officials. Where new guidelines unexpectedly supersede governing rules in effect at the time of sentencing, correction of sentence motions more nearly implicate the judicial sentencing process.

██ The limited jurisdictional authority invested in sentencing courts by § 2255 permits correction of sentences that, as imposed, are subject to collateral attack but does not empower those courts to review the execution of sentences. *See Wright v. United States Board of Parole,* 557 F.2d 74, 77 (6th Cir. 1977). Thus, "critical errors" in the imposition of a sentence, such as a mistaken expectation of the continued general applicability of policy guidelines, may be corrected on a § 2255 motion. *See Silverman I, supra,* 538 F.2d at 1008 & n. 4;

*Kortness v. United States,* 514 F.2d 167, 170 (8th Cir. 1975). However, we do not expand our limited concept of § 2255 jurisdiction so as to invite a flood of suits by prisoners seeking judicial review of individual parole decisions properly left to the discretion of the new Parole Commission.[8] *See Kills Crow v. United States,* 555 F.2d 183 (8th Cir. 1977); *Jacobson v. United States,* 542 F.2d 725, 727 (8th Cir. 1976).[9]

Sentencing judges retain broad authority to reduce sentences during the 120-day period prescribed by Rule 35, Fed.R.Crim.P., *see, e. g., United States v. Solly,* 559 F.2d 230 (3d Cir. 1977), but after that period has expired they may correct sentencing errors only within the narrow confines of *Silverman.* This court continues to follow the rule that a sentencing court has jurisdiction under 28 U.S.C. § 2255 to correct a sentence only where the sentencing judge's express intent is thwarted by the promulgation of new parole policies contemporaneous or subsequent to the original imposition of sentence.[10] In the case at hand, the district court was aware of the 1973 Guidelines when sentence was imposed and, therefore, the court exceeded its jurisdictional author-

---

**8.** We note that Congress, in the recent Parole Commission and Reorganization Act, *supra* note 1, has provided that the sentencing court may reduce a prisoner's "minimum term" to time served upon motion by the Bureau of Prisons at any time. 18 U.S.C.A. § 4205(g) (West Supp.1977). "Minimum term" apparently means the term "at the expiration of which the prisoner shall become eligible for parole." See 18 U.S.C.A. § 4205(a) & (b) (West Supp. 1977). The Joint Explanatory Statement of the Committee of Conference concerning P.L. 94–233 (House Report No. 94–838) contains this comment on 18 U.S.C.A. § 4205(g):

"(g) This subsection provides a means by which the minimum term of any federal prisoner may be reduced to make the individual eligible for parole consideration."

See 94th Cong., 2d Sess. (1976), 2 U.S.Code Cong. & Admin.News, p. 357 (1976).

**9.** The Court of Appeals for the Eighth Circuit has drawn the same jurisdictional line for § 2255 motions as we do. *Compare Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975), *and United States v. White,* 540 F.2d 409 (8th Cir. 1976), *with Kills Crow v. United States,* 555 F.2d 183 (8th Cir. 1977), *and Banks v. United States,* 553 F.2d 37 (8th Cir. 1977).

**10.** We recognize that other courts of appeals reject or question § 2255 jurisdiction as a basis for correcting thwarted sentencing expectations even in the narrow context of *Silverman, Ponzio* and *Kortness.* See *Andrin v. United States Bd. of Parole,* 550 F.2d 519 (9th Cir. 1977); *United States v. McBride,* 560 F.2d 7 (1st Cir. 1977). *See also Wright v. United States Bd. of Parole,* 557 F.2d 74 (6th Cir. 1977); *United States v. Kent,* 563 F.2d 239 (5th Cir. 1977). We reiterate our view, shared by the Eighth Circuit, that because a critical error in the imposition of a sentence renders that sentence subject to collateral attack, § 2255 authorizes the sentencing court to assume jurisdiction to correct the sentence. *Cf. United States v. Lewis,* 392 F.2d 440 (4th Cir. 1968). We note in this regard that the Supreme Court, after thoroughly canvassing the relevant legislative history, concluded that "the sole purpose [of section 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *United States v. Hayman,* 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952).

ity when it resentenced the § 2255 prisoner in December 1976.

Accordingly, the district court's order of December 2, 1976, resentencing Charles Musto to time already served, will be reversed. We note that the Court of Appeals for the Eighth Circuit used this language in *Kills Crow v. United States, supra* at page 189 of 555 F.2d:

"... [Musto] has been released from custody since [December 1976] and his mandatory release date, as originally set, [was July 6, 1977]. Our holding does not prevent the Parole Commission from affording [Musto] a parole hearing before reincarceration to determine whether or not [he] should be returned to prison. *United States v. White, supra,* 540 F.2d at 412."

*See also* last sentence of note 8, *supra.*
Reversed.