UNITED STATES of America, Plaintiff,

v.

Herbert BAYLIN, Defendant.

Crim. A. No. 81–22.

United States District Court,
D. Delaware.

Feb. 9, 1982.

Irving Morris and Kevin Gross of Morris & Rosenthal, P. A., Wilmington, Del., and Thomas B. Carr of Miller, Cassidy, Larroca & Lewin, Washington, D. C., for defendant.

Joseph J. Farnan, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., for plaintiff.

## OPINION

LATCHUM, Chief Judge.

On May 20, 1981, Herbert Baylin entered a plea of guilty in this court to a one count information charging him with participating in the preparation of a false corporate

income tax return, in violation of 26 U.S.C. § 7602(2). The guilty plea was entered pursuant to a plea agreement executed by Baylin and the United States on that same day. On July 22, 1981, Baylin was sentenced to a term of imprisonment of three years and a fine of $5,000, the maximum penalty allowed under law for the offense charged. Approximately three months after he was incarcerated, Baylin filed a motion for correction and reduction of sentence pursuant to Rule 35, F.R.Cr.P., or alternatively, for habeas corpus relief pursuant to 28 U.S.C. § 2255. The principal thrust of this motion is that: (1) the court which accepted Baylin's guilty plea failed to inform him of certain essential consequences of the plea; and (2) the sentencing court thereafter failed to implement fully the terms of the plea agreement, thus frustrating the sentencing expectations of Baylin, his counsel and the government. Accordingly, petitioner now seeks "specific performance" of the plea agreement as that document is interpreted by him, and requests the Court to reduce or correct his sentence in such a way that he will actually serve no longer than six months total in prison. For the reasons discussed in this opinion, the Court concludes that petitioner's motion will be denied, but that he will be given leave to amend his motion, if he so desires, to allege proper grounds for relief.[1]

I. *Facts*

On May 20, 1981, the United States filed in this Court a one count information charging that the petitioner, Herbert Baylin, as President of the R. Baylin Company, participated in the preparation of a false corporate income tax return for fiscal year ending April 30, 1976, in violation of 26 U.S.C. § 7206(2). (Docket Item ["D.I."] 2.) The return had grossly overstated the business expenses of the corporation with the result that federal tax liability was understated by approximately $116,000. (*Id.*). In return for Baylin's plea of guilty to the information and full cooperation with the United

States in certain investigations concerning the diversion of foreign shipments, the United States agreed that it would make no recommendation regarding sentencing and would not prosecute petitioner on two other charges of income tax evasion and several other offenses relating to the diversion of foreign shipments and the theft or receipt of stolen goods, for which petitioner was then under investigation. (D.I. 3.) In addition, at the insistence of Baylin's counsel and after extensive negotiations with the government, the following critical clause was inserted into the plea agreement:

3. Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, in the event that the Court determines that a period of incarceration should be included in any sentence of the Defendant, then with respect to eligibility for parole:

(a) If the period of incarceration ordered by the Court is less than six months, the Court shall embody in its judgment and sentence a provision stating the period of incarceration that is appropriate;

(b) If the period of incarceration ordered by the Court is not less than six months but not more than one year, the Court shall embody in its judgment and sentence a provision under Title 18, United States Code, Section 4205(f) stating that the Defendant shall be released as if on parole after service of one-third of such period of incarceration notwithstanding the provisions of Title 18, United States Code, Section 4164; and

(c) *If the period of incarceration ordered by the Court is more than one year, the Court shall embody in its judgment and sentence a provision under Title 18, United States Code, Section 4205(b)(2) stating that after incarceration, the Defendant shall be immediately eligible for release on parole and shall be released on parole at such time as the United States Parole Commission shall determine.*

(D.I. 3 at 2–3) (emphasis added).

Petitioner contends that it was the understanding and intent of all the parties to the

---

1. Because of the Court's disposition of this motion, Baylin's motion for leave to take dis-

covery pursuant to Rule 6 of the rules governing § 2255 proceedings will be denied.

agreement that if he were sentenced to a period of incarceration for longer than one year, by virtue of Paragraph 3(c) above, he would not actually serve more than one-third of the sentence imposed in prison. (D.I. 17 at 15.) The government, on the other hand, maintains that Paragraph 3(c) only guaranteed immediate "eligibility" for parole and did not establish any entitlement to release by a date certain. (D.I. 20 at 4.)

On the same date that the information was filed, Baylin appeared before the Court and entered his guilty plea. Pursuant to Rule 11, F.R.Cr.P., the Court addressed the petitioner in open court and explained in depth the nature of the charge to which the plea was offered, the mandatory maximum penalty provided by law for the offense charged and the legal rights which petitioner would waive by pleading guilty. (D.I. 12 at 3–15.) Petitioner does not now claim that he was not adequately informed of, or failed to understand, any of the foregoing elements. The Court then asked Baylin's counsel to describe the salient points of the plea agreement. With respect to the parole provisions, the attorney stated:

> There are also rather complex agreements with respect to the way in which the sentence will be imposed, the thrust of which is to enable Mr. Baylin *to apply for probation or parole* at the earliest possible moment in the event there is any period of incarceration imposed in this particular case.

(D.I. 12 at 16) (emphasis added).

Immediately thereafter, the Court closely questioned Baylin concerning his knowledge of the charges and the terms of the agreement, and engaged in the following colloquy:

> The Court: Aside from the promises that have been related in the plea agreement and spelled out by Mr. Carpenter, have any other promises, agreements, representations, or understandings been made which are related in any way to your desire to plead guilty?
>
> Baylin: No, your Honor.
>
> The Court: Have any threats been made to you by anyone to induce you to plead guilty?

> Baylin: No threats have been made, your Honor.
>
> The Court: Do you believe that at this time it is already known what your sentence will be with respect to this offense if you should plead guilty?
>
> Baylin: I have no idea what it will be.
>
> The Court: There have been occasions in the past when people have come back to the Court and they have said that there were other items that were included in the plea agreement which were not mentioned at the proceeding where the plea was taken, and when asked why those other items or promises were not mentioned they have sometimes said, "Well, my lawyer said I shouldn't mention them" or "It was part of the agreement that they shouldn't be mentioned." This is not this case, is it?
>
> Baylin: No, it is not, your Honor.
>
> The Court: You have told me all there is to know about the plea agreement?
>
> Baylin: I have.
>
> The Court: Do you understand that you may not at some later time contend that any promise, representation, agreement, understanding or threat was made by anyone other than set forth today in open court?
>
> Baylin: I do, your Honor.

(D.I. 12 at 18–19.) After further examination concerning the factual predicate underlying the offense, the Court concluded that Baylin's plea of guilty was voluntarily and intelligently made and the terms of the plea agreement were accepted. (D.I. 12 at 23.)

About July 8, 1981, two weeks prior to the sentencing date, Baylin received from his counsel a copy of the pre-sentence report prepared by the Probation Office. Included within the report was a parole prognosis formulated under the Parole Commission Guidelines ("Guidelines"), which identified a range of time to be served before release on parole in all likelihood would be granted if Baylin received a prison sentence. Under the Guidelines, the offense committed by a defendant is assigned a

"severity" rating, ranging from "low" to "greatest II." Each defendant is then given a "salient factor score" between 0 and 11, which quantifies the offender's particular characteristics, i.e. the age at which the defendant committed the offense, his employment background, his criminal record, if any, his use of drugs, if any, and any previous parole revocations. The higher the offender's salient factor score, the more favorable the parole prognosis would be. Although Baylin's salient factor score, as calculated by the Probation Officer, was 11, because the offense severity was categorized as "very high" the pre-sentence report indicated that "[b]ased on the Parole Commission's guidelines, the defendant would serve between 24–36 months before being paroled."

In a letter to Baylin's counsel accompanying the pre-sentence report, the Probation Officer explained his application of the Guidelines to the facts of Baylin's case and stated that the probable period of confinement was computed to "give the sentencing Judge a general approximation of the amount of time the defendant may be required to serve before parole, in the event he is sentenced to a prison term in excess of the guidelines." (D.I. 17, ex. 6.) The officer cautioned Baylin's attorney, however, that the "guidelines are only guidelines," and that the assessment of time Baylin would remain confined under the Guidelines would rest with the Parole Commission and not with the preparer of the pre-sentence report. (Id.).

Baylin concedes that he reviewed the pre-sentence report, including the parole prognosis, and that he questioned his attorney about the implications of the "salient factor score" and the "very high severity" classification. (D.I. 16 at 3.) Nonetheless, Baylin insists that the Guidelines and their effect on his probable parole date were never fully explained to him by either defense counsel or the government. Moreover, he claims to have been consistently advised by his attorneys that, under the plea agreement accepted by the Court, he would only have to serve one-third of any term of imprisonment to which he was sentenced. (Id.).

On July 22, 1981, Baylin appeared before the Court and was sentenced to a term of imprisonment of three years and a fine of $5,000. (D.I. 13 at 17.) Pursuant to the terms of Paragraph 3(c) of the plea agreement, the sentencing Court further ordered that "the defendant shall become eligible for parole under 18 U.S.C. § 4205(b)(2), at such time as the Parole Commission may determine." (Id.). This sentence was embodied in a Judgment and Commitment Order signed by the Court on the same date. (D.I. 8.) At no time during the sentencing proceeding or during the weeks immediately subsequent to the proceeding, did either Baylin or his attorneys question any of the terms of the commitment order, including the parole eligibility provision set by the Court.

Approximately two months after Baylin was incarcerated, in September, 1981, he received an initial hearing before a panel of the Parole Commission. After reviewing his application for parole, the hearing panel concluded that, under the Guidelines, Baylin would be released on parole after he had served 24 months of his sentence, assuming of course good institutional performance and adjustment. (D.I. 17 at 25.) The hearing panel's recommendation was rejected by the Southeast Regional Office of the Parole Commission, however, which concluded that Baylin should remain confined until the expiration of his term. (D.I. 17, ex. 11.) With the inclusion of good time allowances available to him by law, Baylin was given a presumptive parole date of November, 1983, at which time he will have actually served 27 months of his sentence. The Regional Office further observed that "after a review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted." (D.I. 17, ex. 11.)

Baylin principally argues that it was the intent of the parties to the plea agreement that he would serve no longer than one-third of any sentence he received in excess of one year in prison, and that the sentence of three years coupled with the application

of the Guidelines, of which he was unaware, destroyed the consideration underlying his assent to the agreement. In addition, Baylin contends that the Court erred in failing to advise him during the Rule 11 proceeding of the Guidelines and the minimum amount of time he would be required to remain incarcerated thereunder. (D.I. 17 at 17.) Baylin does not now seek to vacate his plea, nor does he claim that his plea was not voluntary or that he would not have pleaded guilty if he had been fully informed of the application of the Guidelines. Instead, notwithstanding the express terms of the plea agreement, Baylin contends that this Court must enforce the intent and understandings of the parties concerning parole, and proposes various remedies which would insure his release from prison by early February, 1982, six months after he was incarcerated.

## II. *Rule 11 Proceeding*

As a preliminary matter, the Court rejects, as a matter of law, petitioner's contention that he should have been advised of the Parole Commission Guidelines and their effect on his probable date of parole before his guilty plea was accepted by the Court. Rule 11 requires that a defendant be informed of only two sentencing consequences—the maximum possible penalty and the mandatory minimum penalty, if any, provided by law. *Hunter v. Fogg*, 616 F.2d 55, 60 (C.A. 2, 1980). The Advisory Notes to Rule 11 make clear that this information does not encompass an explanation of parole consequences:

The objective [of Rule 11] is to insure that a defendant knows what minimum sentence the judge must impose and what maximum sentence the judge may impose. This information is usually ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant. Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.

It has been suggested that it is desirable to inform a defendant of additional consequences which might follow from his plea of guilty. *Durant v. United States*, 410 F.2d 689 (1st Cir. 1969), held that a defendant must be informed of his ineligibility for parole. *Trujillo v. United States*, 377 F.2d 266 (5th Cir. 1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed. 221 (1967), held that advice about eligibility for parole is not required.

\* \* \* \* \* \*

Under the rule the judge is not required to inform a defendant of these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant. Currently, certain consequences of a plea of guilty, such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant.... At the time the judge is required to advise the defendant of the consequences of his plea, the judge will usually not have seen the presentence report and thus will have no basis for giving a defendant any very realistic advice as to when he might be eligible for parole.

Those courts which have considered the issue, including the Court of Appeals for the Third Circuit, likewise have held that a trial court ordinarily need not explain parole possibilities to a defendant in a Rule 11 inquiry, including the probable date of parole or the mechanics underlying the parole system. *See United States v. Garcia*, 636 F.2d 122, 123 (C.A. 5, 1981); *Hunter v. Fogg, supra*, 616 F.2d at 60; *Strader v. Garrison*, 611 F.2d 61, 63 (C.A. 4, 1979); *Bell v. State of North Carolina*, 576 F.2d 564, 565 (C.A. 4), cert. denied, 439 U.S. 956, 99 S.Ct. 356, 58 L.Ed.2d 348 (1978); *Bunker v. Wise*, 550 F.2d 1155, 1158 (C.A. 9, 1977); *Berry v. United States*, 412 F.2d 189, 192 (C.A. 3, 1969).

Baylin argues, however, that at the time his plea was accepted, his likely period of incarceration under the Guidelines exceeded the maximum amount of time he would

have to serve under any sentence the Court could impose, and that the application of the Guidelines, therefore, had the practical effect of making him "ineligible" for parole.[2] Citing several cases in which a defendant's statutory ineligibility for parole was deemed an essential consequence of a plea, which must be disclosed in a Rule 11 inquiry, Baylin contends that the existence of the Guidelines and his parole prognosis likewise should have been disclosed by the Court before his plea was accepted. This analogy is simply without merit.

Prior to its amendment in 1975, Rule 11 required a court to inform a defendant desiring to plead guilty of the "consequences of the plea." Drawing from this language, the majority of appellate courts, including the Third Circuit, held that trial courts were obligated to inform a defendant of any statutory provision making him ineligible for parole during the entire term of imprisonment, in order to comply with Rule 11. *See e.g., Bye v. United States,* 435 F.2d 177, 179 (C.A. 2, 1970); *Harris v. United States,* 426 F.2d 99, 101 (C.A. 6, 1970); *Jenkins v. United States,* 420 F.2d 433, 437 (C.A. 10, 1970); *Durant v. United States,* 410 F.2d 689, 691 (C.A. 1, 1969); *Berry v.*

*United States,* 412 F.2d 189, 192 (C.A. 3, 1969); *Munich v. United States,* 337 F.2d 356, 361 (C.A. 9, 1964). *But see Trujillo v. United States,* 377 F.2d 266, 269 (C.A. 5), *cert. denied,* 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967); *Smith v. United States,* 324 F.2d 436, 441 (C.A.D.C.1963), *cert. denied,* 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964). These cases dealt primarily with violations of federal narcotics laws, which contained explicit unconditional provisions precluding any possibility of parole in the event of a conviction. *See* 26 U.S.C. § 7237(d) (repealed). In each case, moreover, a clear distinction was made between normal sentencing procedures in which the authority of the Parole Commission would later be invoked to determine the date of conditional release from confinement, and those instances in which this discretion was eliminated by statute. Only in the latter case would disclosure of parole consequences to a Rule 11 defendant be required.[3]

The facts before this Court clearly do not fall within the ambit of these decisions. At the time that his plea was accepted, Baylin was neither statutorily ineligible for parole, nor otherwise barred from seeking parole

**2.** The period of incarceration which Baylin would have to serve before parole under the Guidelines ranged from 24 to 36 months. Baylin argues that if he were sentenced by the Court to a term of imprisonment of two years or less, he could not be paroled under the Guidelines. Moreover, even if he were sentenced to the maximum term of imprisonment of three years, Baylin contends that he would also in all likelihood not be paroled. Under 18 U.S.C. § 4161, if Baylin accumulated the amount of good time allowances available by law, his mandatory release date on a term of imprisonment of three years would occur no later than 27 months into his sentence. Because Baylin's "median parole release date under the Guidelines" was 30 months, he concludes that the Parole Commission would most likely not parole him before his mandatory release date. Thus, in effect, the application of the Guidelines purportedly divested Baylin of his eligibility for parole. (D.I. 17 at 38–40.)

**3.** Parenthetically, the vitality of the general rule requiring disclosure of parole ineligibility may be in doubt. As noted above, at the time this principle evolved, Rule 11 required a court to inform a defendant of the "consequences of the plea." In 1975, Rule 11 was amended to clarify

the "consequences" which must be explained to a defendant, and, as currently worded, it requires that a defendant be informed only of the maximum possible penalty, and the mandatory minimum penalty, if any, provided by law. *Hunter v. Fogg,* 616 F.2d 55, 60 (C.A. 2, 1980). The Advisory Notes on the amendment specifically disapproved of the line of cases holding that parole ineligibility must be disclosed prior to accepting the plea and noted that this obligation is not required by the rule. Based on the language of Rule 11, as amended, and the Advisory Notes, at least two courts of appeals have overruled their earlier opinions and now hold that a trial court need not advise a defendant of statutory parole ineligibility in a Rule 11 proceeding. *See Johnson v. United States,* 650 F.2d 1, 4 (C.A. 1, 1981); *Hunter v. Fogg, supra,* 616 F.2d at 60. In addition, the Sixth Circuit has questioned, without deciding, whether the amended rule imposes a requirement similar to the previous version. *See Armstrong v. Egeler,* 563 F.2d 796, 800 (C.A. 6, 1977). Because the Court finds that Baylin was at no time ineligible for parole, it need not decide this troublesome issue.

during any term of imprisonment which might be imposed. The decision to deny or grant parole lay entirely within the discretion of the Parole Commission, which could release Baylin immediately, determine that he should remain confined until the expiration of his term, or settle on some period of incarceration between those two extremes. The fact that the Commission exercised its discretion to set a presumptive parole date at 27 months does not alter the fact that Baylin had an opportunity to convince the Commission of the wisdom of earlier release. *See Hunter v. Fogg, supra,* 616 F.2d at 63.

Moreover, although it was likely that the Commission would be guided in its consideration of a presumptive release date by the Guidelines, this factor did not severely limit or undermine the flexibility of the decision-making process. *See Priore v. Nelson,* 626 F.2d 211, 216 (C.A. 2, 1980); *Ruip v. United States,* 555 F.2d 1331, 1337 (C.A. 6, 1977); *Frank v. United States,* 515 F.Supp. 703, 707 (W.D.Pa.1981). The Guidelines were promulgated pursuant to Congressional authority, 18 U.S.C. § 4203(a), to insure more consistent and equitable decisionmaking in the parole process, while at the same time retaining the element of individualized review. *See* 28 C.F.R. § 2.20(a). They are not hard and fast rules, however, and the Commission is free to ignore the Guidelines entirely, whenever "circumstances warrant." 28 C.F.R. § 2.20(c). "Mitigating or aggravating circumstances in a particular case" may justify a departure from the Guidelines. 28 C.F.R. § 2.20(d). In addition, even if a presumptive release date is initially formulated under the Guidelines, the Commission has discretion to advance the date if clearly exceptional circumstances exist. 28 C.F.R. § 2.14. In sum, although the Guidelines may call for an actual period of incarceration equal to or greater than the maximum sentence which could be served under law without parole, it does not inexorably follow that the Commission will choose to apply the Guidelines in a given case and require the defendant to serve this period of time.

As the Advisory Notes to Rule 11 indicate, it also would not be feasible for the Court to advise a defendant in a Rule 11 proceeding of the effect of the Guidelines on his probable parole date. Although the Court might be able to calculate the "severity rating" of a defendant's offense under the Guidelines at the time a plea is accepted, the "salient factor score" could not be computed because this figure is based on information compiled during the pre-sentence investigation and is not available until some time after the Rule 11 proceeding. Thus, the Court could only describe the Guidelines in the most general terms to the defendant and would be unable to supply the information which could prove most useful—the likely range of incarceration that particular defendant could expect to serve if the Guidelines are mechanically applied. Because of this inability to predict a probable range of confinement and because of the discretion vested in the Commission to suspend the application of the Guidelines in any event, the usefulness of a detailed discussion of parole possibilities would be questionable. *See Frank v. United States,* 515 F.Supp. 703, 708 (W.D.Pa.1981). *A fortiori,* the failure of the Court to supply nonspecific information about the Guidelines and the parole process could not be considered a violation of Rule 11.

The Court thus finds that the failure of the Court which accepted Baylin's plea to advise him of the Guidelines and their implications with respect to his probable parole date did not violate Rule 11.

### III. *Sentencing Proceeding*

Petitioner has also raised a number of arguments challenging the propriety of the sentence imposed upon him by the Court. Before resolving these issues, it is necessary to bring into proper focus the parole eligibility provision of the plea agreement which is at the heart of this controversy.

As noted previously, Paragraph 3(c) of the plea agreement provides:

(c) If the period of incarceration ordered by the Court is more than one year, the Court shall embody in its judgment and

sentence a provision under Title 18, United States Code, Section 4205(b)(2) stating that after incarceration, the Defendant shall be immediately eligible for release on parole and shall be released on parole at such time as the United States Parole Commission shall determine.

18 U.S.C. § 4205(b)(2) states in pertinent part:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year ... (2) ... may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

Section 4205(b)(2) is one of three primary parole options available to courts at the time of sentencing, in cases where a term of imprisonment in excess of one year is imposed. *Wilden v. Fields*, 510 F.Supp. 1295, 1306 (W.D.Wis.1981). A "straight" sentence under § 4205(a) affords a defendant automatic eligibility for parole after serving one-third of his term. A sentencing court may accept this parole eligibility date or may further reduce the amount of time a defendant must serve before consideration for parole in one of two ways. Under § 4205(b)(1), the judge may designate a parole eligibility date at a time before the one-third point of a defendant's term. Alternatively, under § 4205(b)(2), the judge may provide for immediate eligibility and eliminate entirely any minimum period of incarceration as a prerequisite for applying for parole. *See Musto v. United States*, 571 F.2d 136, 138 (C.A. 3, 1978), *cert. denied sub nom. Farmer v. United States Parole Comm.*, 442 U.S. 943, 99 S.Ct. 2888, 61 L.Ed.2d 314 (1979).

Both the express language of § 4205(b)(2) and the case law generated thereunder clearly demonstrate that all that is guaranteed by that section is immediate "eligibility" for parole and not entitle-ment to release by a certain time. *Priore v. Nelson*, 626 F.2d 211, 216 (C.A. 2, 1980); *Moore v. Nelson*, 611 F.2d 434, 437 (C.A. 2, 1979); *see United States v. Ferri*, 652 F.2d 325, 328 (C.A. 3, 1981); *United States v. Parker*, 617 F.2d 141, 142 (C.A. 5, 1980); *Shahid v. Crawford*, 599 F.2d 666, 669 (C.A. 5, 1979). By setting an early eligibility date, the sentencing court insures only that "the defendant will be considered at that time by the Parole Commission." *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979). Whether the defendant will actually be granted parole or not, however, is left to the discretion of the Commission, *id.* at 189, n.15, 99 S.Ct. at 2242, n.15, and the sentencing court is not empowered to give any assurances of an actual date of release. *Goode v. Markley*, 603 F.2d 973 (C.A.D.C. 1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980); *Musto v. United States, supra*, 571 F.2d at 138. Nor does a defendant sentenced to a term of imprisonment otherwise possess any constitutional or inherent right to be conditionally released before the expiration of his sentence. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). Thus by imposing a sentence that provides for immediate eligibility for parole under § 4205(b)(2), all that is created is a possibility of release and the subsequent denial of parole does not give rise to any cognizable legal claim for which appropriate redress can be obtained. *See Page v. United States*, 651 F.2d 1083, 1086 (C.A. 5, 1981).

The courts have also held that a defendant sentenced under § 4205(b)(2) is not entitled to any special consideration by the Parole Commission when actually setting a presumptive or effective release date. Although this section requires the Commission to give early consideration to a request for parole, (b)(2) prisoners are judged by the same substantive criteria governing all other prisoners in determining the advisability and timing of release. *See Moore v. Nelson, supra*, 611 F.2d at 438; *Shahid v. Crawford, supra*, 599 F.2d at 669–70; *Chris-*

topher v. United States Board of Parole, 589 F.2d 924, 932 (C.A. 7, 1978); Musto v. United States, supra, 571 F.2d at 138; Wilden v. Fields, supra, 510 F.Supp. at 1307. The legislative history of the Parole Commission and Reorganization Act of 1976 reveals that this standardization of criteria was intentional:

[T]he standards and criteria [for parole release] are made the same for all federal prisoners without regard to which of the three main sentencing alternatives is utilized by the court. This will be of significant benefit to the federal correctional institutions because offenders sentenced for similar crimes under similar circumstances will be required to serve comparable periods of incarceration.

S.Rep.No. 369, 94th Cong., 2d Sess. 18 reprinted in [1976] U.S.Code Cong. & Ad. News 335, 340; Shahid v. Crawford, supra, 599 F.2d at 669. Thus, the Commission may permissibly choose to apply its Guidelines to (b)(2) prisoners in the same manner that they would be applied to other prisoners, and a (b)(2) defendant, like Baylin, may receive a presumptive release date no earlier than that given to defendants sentenced under more restrictive parole eligibility sections. See Moore v. Nelson, supra, 611 F.2d at 439; Shahid v. Crawford, supra, 599 F.2d at 670; Wilden v. Fields, supra, 510 F.Supp. at 1307.

Against this backdrop, the Court can easily dispose of petitioner's various claims of defect in the sentencing proceeding.

■ Petitioner argues at the outset that the Court violated the plea agreement by failing to insert into the judgment and commitment order the precise language contained in the agreement, viz., that Baylin was to be "immediately eligible for release on parole." Instead, the Court stated that

the defendant would "become eligible for parole under 18 U.S.C. § 4205(b)(2) at such time as the Parole Commission may determine." (D.I. 13 at 17.) Although the Court's wording did not exactly track the language of Paragraph 3(c) of the plea agreement, by sentencing Baylin under § 4205(b)(2), the Court clearly conveyed the fact that the petitioner would be immediately eligible for parole.[4] Moreover, both counsel for petitioner, and government counsel, on two separate occasions, brought Baylin's parole eligibility status under § 4205(b)(2) to the attention of the Parole Commission (D.I. 17, ex. 10 & 11), and petitioner does not now allege that the Commission at any time during its deliberations failed to appreciate this fact. Thus, precise incantation of the words "immediate eligibility for parole" would not have altered either the sentence imposed by the Court or the parole consequences arising therefrom.

■ Petitioner next argues that the sentencing court erroneously failed to give full force and effect to the terms of the agreement, as that agreement was intended to be construed by the parties. It is clear, however, that despite the factual and legal meandering contained in Baylin's petition, he received from the Court no less than what the specific language of the plea agreement called for—an immediate opportunity to be considered for parole without first serving a minimum period of incarceration. In characterizing the parole eligibility provision of the plea agreement in the Rule 11 hearing, Baylin's attorney stated that its purpose was "to enable Mr. Baylin to apply for probation or parole at the earliest possible moment." (D.I. 12 at 16.) Moreover, Baylin himself concurred in this interpretation when he assured the Court that no other understandings, promises or agreements,

---

4. The sentencing language used by the Court was patterned on § 4208(a)(2), the predecessor to § 4205(b)(2), which authorized a sentencing court to specify that the prisoner may "become eligible for parole at such time as the board of parole may determine." 18 U.S.C. § 4208(a)(2) (repealed). Although the present version, codified at § 4205(b)(2), authorizes a sentencing court to specify that the prisoner may be "released on parole at such time as the commission may determine," the courts have held that there is no substantive difference between these two sections. Both § 4208(a)(2) and § 4205(b)(2) provide for immediate eligibility for parole. See Moore v. Nelson, supra, 611 F.2d at 437, n.5; Wilden v. Fields, supra, 510 F.Supp. at 1306, n.9.

other than those contained in the plea agreement itself and described by his counsel in the proceeding were then extant. (D.I. 12 at 18–19.) At no time prior to, or during, the plea hearing was the Court advised of any understanding that Baylin would be unconditionally released no later than one year after he was confined. Thus, notwithstanding any concealed agreement shared by the parties, the plea agreement accepted under Rule 11 properly encompassed solely the plain words of the document submitted to, and described in, open court. The express terms of that agreement, in turn, were fully honored by the sentencing Court in its judgment and commitment order.

As far as the Court can discern, Baylin's position rests on two fundamental misperceptions of law. First, Baylin seems to contend that a prisoner granted immediate eligibility for parole under § 4205(b)(2) must be released by the time he has completed serving one-third of his sentence, or the benefit secured by a (b)(2) sentence would be no greater than that afforded any prisoner serving "straight" time. As the Court has clearly established, however, the benefit conferred by § 4205(b)(2) is simply an early opportunity for release, subject to the discretion of the Commission, and not an entitlement to release before expiration of any portion of the prisoner's sentence. This obligation was fully realized in this case when the Parole Commission reviewed Baylin's application for parole within two months after he was incarcerated.

Second, Baylin appears to argue that where parties to a plea agreement share an interpretation as to what that agreement means, which is not disclosed to the Court in the Rule 11 hearing and is expressly contrary to the clear language of the plea agreement itself, by accepting the plea agreement, the Court somehow binds itself to implement the hidden terms. This contention is palpably absurd and would make a mockery of the purposes served by the Rule 11 hearing. Although undisclosed promises may bear on the measure of voluntariness with which a guilty plea is entered (an issue which is discussed later in this opinion), they do not *ipso facto* become integral parts of the plea agreement and give rise to an action for specific performance.

In fact, an agreement outlining the unspoken objectives purportedly embraced by petitioner and the government in this case and now urged upon this Court could not have permissibly been accepted in the Rule 11 proceeding held on Baylin's plea. As the Supreme Court has made clear:

> The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges. The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission.

*United States v. Addonizio,* 442 U.S. 178, 188–89, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979). Accordingly, the sentencing court is simply not empowered to usurp the function of the Parole Commission by setting an actual parole date for a defendant in a judgment and commitment order. By extrapolation, acceptance of a plea agreement in a Rule 11 proceeding which expressly provided for release on parole by a certain date would be *ultra vires.* Since Baylin could not in the first instance accomplish what he now seeks, by disclosing to the Rule 11 Court the alleged agreement to provide for unconditional release by the one-third point of his sentence, he may not now by this habeas petition be legally entitled to specific performance of his undisclosed expectations.

As his final assault on the sentencing proceeding, Baylin argues that the sentencing expectations of the Court may

have been frustrated by the Commission's application of the Guidelines, and accordingly, under authority in this Circuit, a reduction in sentence is in order. The short answer to this challenge is that at the time sentence was imposed, the judge was fully aware of the Guidelines and the specific range of probable incarceration predicted thereunder by the Probation Office in the pre-sentence report. Moreover, the Court understood that § 4205(b)(2) only afforded petitioner an immediate opportunity to be considered for parole by the Commission and that the Guidelines could possibly be applied in setting a presumptive parole date. Thus, the sentencing expectations of the Court were in no way thwarted by the Commission's invocation of its Guidelines.[5]

In addition, the Supreme Court has held as a matter of law that unrealized subjective expectations of a sentencing judge cannot provide a basis for collateral attack on a sentence pursuant to § 2255. *United States v. Addonizio*, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979). Thus, whether or not the Commission's actions in this case were consistent with the Court's expectations at the time of sentencing would be legally irrelevant.

The Court finds that the sentencing Court fully complied with the terms of the plea agreement in imposing sentence on the petitioner, and no relief under either § 2255 or Rule 35 is warranted with respect to these issues.

## IV. *Voluntariness of the Plea*

 Although the Court has rejected the specific grounds for relief outlined in Baylin's petition, a possible question remains lurking in the periphery as to the voluntariness of Baylin's guilty plea. Gen-

erally, a valid guilty plea must be knowingly, voluntarily and intelligently entered. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). If, as Baylin suggests, either his attorneys or the government affirmatively assured him that he would actually serve no more than one-third of any sentence of imprisonment imposed by the Court, and he was induced to plead guilty by this representation, Baylin might have a claim that his plea was not voluntarily entered. It is inconsequential, for purposes of assessing voluntariness, that this assurance could not have been implemented by the Court. *See United States v. Marzgliano*, 588 F.2d 395, 399 (C.A. 3, 1978). All that Baylin must show is that he was affirmatively misled to believe that he would be released on parole by a certain date, and he entered his plea in reliance on that advice.[6] *See Strader v. Garrison*, 611 F.2d 61, 63 (C.A. 4, 1979); *United States v. Goodman*, 590 F.2d 705, 711–12 (C.A. 8), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *United States v. Marzgliano, supra*, 588 F.2d at 399; *United States v. Valenciano*, 495 F.2d 585, 587 (C.A. 3, 1974); *Moorhead v. United States*, 456 F.2d 992, 995 (C.A. 3, 1972).

Before an evidentiary hearing will be ordered on this issue, however, certain threshold requirements must be met. The petition would have to be amended to allege more specific facts as to the exact assurances that were purportedly given to Baylin and the reliance resulting therefrom. In addition, the Court is aware that Baylin expressly declined to request vacation of his plea as an alternative remedy in his petition and sought only correction or reduction of sentence. Because the proper redress for an involuntary plea is to vacate the convic-

---

5. Although the sentencing intent claim is a factual issue, it may be resolved by the sentencing judge alone, without the necessity of a factual hearing. *United States v. Salerno*, 538 F.2d 1005, 1009 (1976); *Holland v. United States*, 427 F.Supp. 733, 735 n.2 (E.D.Pa.1977), *aff'd without opinion*, 571 F.2d 571 (C.A. 3, 1978).

6. Of course, any unilateral expectation on Baylin's part as to the likely date of parole, not induced by any affirmative misrepresentations,

could not provide a basis for challenging the voluntariness of the guilty plea. The exercise of discretion by the Parole Commission and the very purposes behind plea bargaining itself clearly would be frustrated if a prisoner could attack the validity of a plea simply by claiming that a parole decision was contrary to his expectations at the time his plea was accepted. *See Frank v. United States*, 515 F.Supp. 703, 707 (W.D.Pa.1981).

tion and allow the defendant to plead anew, to whatever charges the government may lodge against him,[7] Baylin first must be given the opportunity to decide whether it is in his best interest to seek this relief. Accordingly, the amended petition, if filed, must request that the guilty plea be vacated, and the plea agreement nullified.

▮ Ordinarily, a prisoner is entitled to a hearing on his § 2255 petition unless the files and records of the case conclusively show that he is entitled to no relief. 28 U.S.C. § 2255; *United States v. Goodman, supra,* 590 F.2d at 710; *United States v. Marzgliano, supra,* 588 F.2d at 397. Although the courts have demonstrated considerable solicitude in administering this right, more than conclusory allegations, unsupported by specific facts, are required to warrant an evidentiary hearing, particularly in a case, such as this, where the defendant seeks relief from a guilty plea on the ground of undisclosed promises, and thus attempts to recant statements made by him under oath during a Rule 11 proceeding. *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Machibroda v. United States,* 368 U.S. 487, 496, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). A prisoner may not rest his petition solely on the blanket statement that his plea was induced by an unkept promise; he must proceed to state the exact terms of the promise and "when, where and by whom the promise had been made." *Blackledge v. Allison, supra,* 431 U.S. at 75–76, 97 S.Ct. at 1629–1630. In addition, "contentions that in the face of the record are wholly incredible" will be summarily dismissed. *Id.* at 74, 97 S.Ct. at 1629.

Although Baylin's present petition states repeatedly that it was the intent and understanding of the parties to the plea agreement that he would be assured of release on parole no later than the one-third point of his sentence, the petition nowhere alleges

objective facts from which a court could determine that the government actually held this view. None of the specific factual allegations made by the petitioner or the exhibits accompanying the petition indicate that the government assented to anything more than his immediate eligibility for parole. More importantly, petitioner has not even specifically alleged, either by affidavit or otherwise, that any misrepresentations were made to him by government counsel concerning his probable date of release from incarceration. Thus, the summary conclusion that the government intended the petitioner to be released on parole by a certain time is of little credible significance.

▮ Petitioner's allegations concerning the promises purportedly made by his attorneys as to his likely parole release date are also insufficiently particularized. Although Baylin claims that his attorneys consistently advised him that he would not actually serve more than one-third of any term of imprisonment to which he was sentenced, the petition does not indicate on what specific occasions, where, and under what circumstances this promise was made. In addition, several facts, related in the petition itself and the accompanying exhibits, cast considerable doubt on whether Baylin's attorneys actually gave him these assurances: (1) the objective evidence indicates that Baylin's attorneys, like the government, bargained only for immediate eligibility for parole, with the hope that Baylin's parole application would receive favorable review (D.I. 17, ex. 2 at 5–6; ex. 4 at 2; ex. 5 at 16; ex. 8 at 3; ex. 9 at 1); (2) one of Baylin's attorneys claims to have discussed with Baylin the Guidelines and their effect on his presumptive release date on the morning before the plea was accepted (D.I. 17 at 13);[8] and (3) Baylin himself concedes that although his attorneys purportedly promised him an early release, he "understood at

---

**7.** Of course, if the plea were vacated and the plea agreement nullified, the government would have the option of filing additional charges against Baylin.

**8.** Baylin claims that he does not recall discussing the Guidelines with his attorney. (D.I. 17 at 13.) The attorneys who represented Baylin at the Rule 11 and sentencing proceedings have since been replaced and are not now representing petitioner in this pending motion.

all times that [his lawyers] were not guaranteeing to him what the Parole Commission would do." (D.I. 17 at 15.) In light of this latter admission, it is not clear what the basis of petitioner's complaint is—an unfulfilled assurance of parole upon which he relied to his detriment, or an incorrect prediction as to when parole was likely. Although gross misadvice of counsel leading to the entry of an improvident plea may make out an ineffective assistance of counsel claim, and undermine the voluntariness of the defendant's actions, *see Strader v. Garrison, supra,* 611 F.2d at 63; *United States v. Marzgliano, supra,* 588 F.2d at 399, where counsel's assurances are no more than predictions which later prove inaccurate, an evidentiary hearing on the voluntariness of the plea is not necessary. *Masciola v. United States,* 469 F.2d 1057, 1059 (C.A. 3, 1972).

■ A defendant's express disavowal of any concealed promises or understandings in a Rule 11 hearing constitutes "a formidable barrier" in any subsequent collateral proceeding attacking the propriety of the guilty plea. *Blackledge v. Allison, supra,* 431 U.S. at 74, 97 S.Ct. at 1629. In this case, the Court should be entitled to rely upon Baylin's assurances in the Rule 11 inquiry that no promises other than those disclosed to the Court had been made to induce him to plead guilty. Nonetheless, because a Rule 11 hearing is an imperfect procedural mechanism which cannot be completely impervious to challenge, the Court will grant Baylin an evidentiary hearing to determine whether his plea was voluntarily entered—*if* he first files an amended petition in accordance with the criteria outlined in this opinion. This petition should succinctly allege the assurances of release on parole which purportedly were given to Baylin by either his attorneys or the government, and must include a description of what was said, when it was said, who said it, where the statements were made and in what context the assurances were given. In addition, the petition should expressly request the Court to vacate Baylin's plea as a remedy for these purported misrepresentations.

## V. *Reduction of Sentence*

■ Petitioner has also moved for a reduction of sentence pursuant to Rule 35. Such a motion is "essentially a plea for leniency," *Poole v. United States,* 250 F.2d 396, 401 (C.A.D.C.1957), and is addressed to the sound discretion of the sentencing court. *United States v. Dawson,* 642 F.2d 1060, 1062 (C.A. 7, 1981); *Gov't of Virgin Islands v. Gereau,* 603 F.2d 438, 443 (C.A. 3, 1979); *United States v. Robinson,* 344 F.Supp. 956, 959 (D.Del.), *aff'd without opinion,* 474 F.2d 1337 (3 Cir., 1972).

■ At the time that sentence was initially imposed in this case, the Court had extensively reviewed the materials in the court record. These items included the information, the plea agreement, the pre-sentence report, the petitioner's memorandum concerning sentencing, the petitioner's medical reports, and the various letters of support tendered on petitioner's behalf. In addition, the Court fully considered any aggravating or mitigating circumstances which might bear on the sentencing decision, the nature of the offense charged and the statements of petitioner and his counsel at the hearing itself. The decision to impose a sentence of three years and a $5,000 fine, the maximum sentence allowable by law, was thus a carefully thought-out decision. This sentence was fully justified, moreover, by the magnitude of the underlying offense, which as this judge explained in the sentencing proceeding, was the worst such case of tax evasion it had seen in its tenure on the bench, and the sheer lack of extenuating circumstances, which could explain Baylin's motives in perpetrating the fraudulent scheme. The Court did not then, and does not now in the light of petitioner's recent allegations of misrepresentations, believe that this sentence was unduly harsh.

Accordingly, petitioner's motion for reduction of sentence will be denied.

## VI. *Conclusion*

For the reasons expressed in this opinion, the motion for correction or reduction of

sentence pursuant to Rule 35, F.R.Cr.P. and/or for habeas corpus relief pursuant to 28 U.S.C. § 2255 will be denied. Petitioner will be granted leave to amend his petition in accordance with the criteria outlined in this opinion.

An order will be entered in accordance with this opinion.