UNITED STATES of America

v.

Ronald MILLER, Appellant.

No. 77–1323.

United States Court of Appeals,
Third Circuit.

Argued Oct. 20, 1977.

Decided Nov. 15, 1977.

Douglas Riblet, Alan A. Turner, Asst. Defenders, Defender Association of Philadelphia, Federal Court Div., Philadelphia, Pa., for appellant.

David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, App. Div., Gilbert J. Scutti, Asst. U. S. Atty., Chief, Crim. Div., Philadelphia, Pa., for appellee.

Before ROSENN and VAN DUSEN, Circuit Judges, and STERN, District Judge.*

OPINION OF THE COURT

PER CURIAM.

On April 6, 1976, Ronald Miller was charged in a two count indictment with unlawfully possessing heroin with intent to distribute in violation of 21 U.S.C. §§ 841 and 844 (1970). On May 25, 1976, the defendant pled guilty to Count I of the indictment, pursuant to a plea bargain providing that the Government would dismiss Count II of the indictment at the time of sentencing. The Government also agreed that it would make no recommendation "as to the sentence to be imposed" but would reserve the right to inform the court whether the defendant had cooperated.

Sentencing was scheduled originally for June 30, 1976, but was continued on several

---

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

occasions, the last of which was a consequence of Miller fleeing the jurisdiction. Miller was apprehended and brought before the district court for imposition of a sentence on September 10, 1976. At that hearing defense counsel attempted to persuade the court that leniency was appropriate. Among other things counsel argued that the defendant's initial drug involvement had been induced by a police officer and that in any event, defendant had cooperated with law enforcement officials.

Counsel for the Government responded to those remarks: first, indicating that a year and a half had elapsed from the time that Miller had been "induced" and the time of the commission of the crime, thus undermining any excuse defense,[1] and second, that Miller had not in fact cooperated.[2]

Following the arguments of counsel, the court imposed a sentence of seven years imprisonment to be followed by a three year special parole term on Count I of the indictment. Pursuant to the plea bargain, the Government's motion to dismiss Count II of the indictment was granted.

## I.

On January 10, 1977, Miller filed a motion to reduce or vacate his sentence. His basic claim was that the Government had violated its bargain not to make any recommendation as to sentence by its remarks during the sentencing hearing. The defendant asserts that our decision in *United States v. Crusco,* 536 F.2d 21 (3d Cir. 1976), and the reasoning of the Supreme Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), require that we vacate the sentence. The district court denied this motion. We affirm, finding that *Crusco* and *Santobello* are distinguishable

from the facts of this case and that the Government has upheld its promise.

## II.

When a plea rests in any significant degree upon a promise of a prosecutor, justice requires that the promise must be kept. This is the basic teaching of *Santobello v. New York, supra,* in which the Court remanded to the state court the duty to fashion an appropriate remedy for the defendant based on the failure of a new prosecutor to fulfill the agreement by his predecessor not to make any recommendation as to defendant's sentence. 404 U.S. at 262–63, 92 S.Ct. 495.

This court applied the *Santobello* rule in *United States v. Crusco, supra,* and it is the rule of this Circuit that the Government must adhere strictly to the terms of the bargains it strikes with defendants. In *Crusco,* the Government agreed to "take no position on sentencing" as a *quid pro quo* for the defendant's guilty plea. 536 F.2d at 25. At the sentencing hearing, defense counsel pled for leniency based on the needs of the defendant's family and the fact that the defendant was not a major crime figure. *Id.* In response to those remarks, the Government stated that the defendant was a dealer of drugs in large quantities and that it "show[ed] the [defendant's] importance in organized crime . . ."[3] and also show[ed] the danger to the community that [defendant] ha[d] by being out in the street." *Id.* The defendant, relying on *Santobello* claimed that the Government's comments breached the promise to take no position on sentencing. The Government claimed that its remarks literally were no recommendation, but were only rebuttal of

---

1. The Government's exact words in response to defense counsel's argument were as follows: How does it make it excusable? Did he hold a gun to his head for a year and a half? How does that make it excusable?

2. Mr. Scutti, the Assistant U. S. Attorney arguing for the Government made the following statement:

    Your Honor, I think to call Mr. Miller's role in this case cooperation is one of the all time travesties I have ever heard.

Number one, the fact he spoke for five minutes with a couple of people this morning is not cooperation.

Mr. Miller knew from the beginning and as far as this alleged episode where he brought the heroin and called the courthouse and everything else, he understood if he was going to cooperate it would have to be the way we said it was to be done, to make a surveillance, to make it easier on him. He has not cooperated at all and I don't see how you can even begin to say he has.

defense counsel's arguments. *Id.* We held that the Government's characterization of its remarks was nothing more than a "transparent effort to influence the severity" of defendant's sentence. *Id.* at 25–26. We then admonished the Government to be careful in its future bargains and to faithfully fulfill its promises. *Id.*

■ Miller contends here that the Government, as in *Crusco*, has breached the terms of its plea bargain. He contends that the cases are indistinguishable. We disagree. In *Crusco*, the Government attempted to characterize its promise *to take no position* as to sentencing as equivalent to a promise to make no *recommendation* as to the terms of the sentence. We recognized that the two promises are different, and held that the unqualified promise of a prosecutor to take no position on sentencing requires strict adherence, an obligation which might require the prosecutor to stand mute in face of defendant's mitigating arguments. 536 F.2d at 26.

■ In this case, however, the Government has only promised to make no recommendation as to sentence and has expressly reserved the right to comment on defendant's cooperation. The defendant challenges two distinct statements by the prosecutor as violative of the bargain: (1) the remarks concerning excuse and (2) the remarks concerning defendant's cooperation. Calling the defendant's lack of cooperation a "travesty" is not a violation of any promise the Government has made; it is fair rebuttal comment on the failure of the defendant to cooperate.

More troubling is the prosecutor's rhetorical remark that defendant's actions were not excusable in spite of alleged coercion by a police officer. The remark does not appear to be directed toward defendant's cooperation or lack of it, which was expressly reserved for Government comment. Defendant thus asserts that the words violated the non-recommendation promise. This argument misapprehends the crucial holding of *Crusco*—that the Government will be held only to what it has promised. In *Crusco* the Government made a broad unqualified promise to take no position whatsoever

as to sentencing and thus gave up its right to fair comment as to the severity of the sentence and whether the defendant should undergo imprisonment. Here, the Government has specifically promised only not to make recommendation as to the sentence. The difference between the two terms is elementary, for the promise not to recommend is narrow, speaking only as to the sentence to be imposed, whereas a promise to take no position speaks to no attempt at all to influence the defendant's sentence. Moreover, the remarks here were merely a rhetorical response to some of defendant's arguments that his conduct was "excusable," unlike the prosecutor's slightly veiled comments in *Crusco* which suggested the imprisonment of the defendant in the face of his broad commitment to take no position whatsoever.

Although we hold that on the facts of this case there is no breach of any promise made by the Government, we again must remind the Government of the semantic pitfalls inherent in plea bargaining. Promises made must be fulfilled, not only in fairness to the accused and the public interests, but also to fulfill the requirements of justice.

The judgment of the district court will be affirmed.

STERN, District Judge, dissenting.

Because I can discern no distinction between a promise "to take no position" on sentence and a promise "to make no recommendation" as to sentence, when each is made by a prosecutor to a defendant, I am unable to join the majority.

I simply do not agree that "[T]he difference between the two terms is elementary, for the promise not to recommend is narrow, speaking only as to the sentence to be imposed, whereas a promise to take no position speaks to no attempt at all to influence the defendant's sentence." [Ante 1275] I do not believe that any defendant could appreciate such a distinction.

In *United States v. Crusco*, 536 F.2d 21 (3rd Cir. 1976), this Court construed a prosecutorial promise to "take no position as to

sentence" to mean that the government had undertaken to refrain from *any* allocution at sentence, even one directed solely at correcting what were claimed to be factual misstatements to the Court by the defense. The majority, and in my view correctly, in summing up *Crusco* says, "We held that the Government's characterization of its remarks [as no recommendation of the terms of the sentence] was nothing more than a transparent effort to influence the severity of the defendant's sentence." [Ante 1275] As to Miller, however, the majority characterizes the government's remarks against mitigation for him as merely "rhetorical".

In *Crusco* the prosecutor did not recommend a specific term of years; he spoke only to contradict the mitigating factors urged by the defense. So too here. I cannot construe the prosecutor's remarks here as rhetorical. He spoke at the moment of sentencing, with the intent to disparage a claim for mitigation made on behalf of one about to be sentenced, and to the very judge who would shortly pronounce that sentence. The government's rhetoric was not rhetorical. It was uttered to influence the sentence. It could have been uttered for no other purpose.

It is well to remember the full text of the words written by Judge Rosenn in *Crusco*:

.   .   . We see the Government's characterization as a transparent effort to influence the severity of Cimmino's sentence. Only a stubbornly literal mind would refuse to regard the Government's commentary as communicating a position on sentencing.

536 F.2d 21, 26 (1976).

I fully concur in the Court's determination that the government violated no promise to the defendant when it apprised the sentencing court of the extent or lack of this defendant's cooperation. The government had bargained away no such right at the time of plea; indeed, it had specifically reserved the area for comment. The very reservation demonstrates the bargain to be silent on the rest.