**UNITED STATES of America**

v.

**Herbert BAYLIN, Petitioner-Appellant.**

**Nos. 82–1214, 82–1227.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 16, 1982.

Decided Dec. 30, 1982.

Joseph J. Farnan, Jr., U.S. Atty., D. Del., John X. Denny, Jr., Peggy L. Ableman (argued), Asst. U.S. Attys., D. Del., Wilmington, Del., for U.S.

Irving Morris, Kevin Gross, Morris & Rosenthal, P.A., Wilmington, Del., Nathan Lewin (argued), Thomas B. Carr, James E. Rocap, III, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Herbert Baylin.

Before ADAMS, HUNTER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

In May, 1981, appellant Herbert Baylin pled guilty to a one-count income tax violation. He entered the plea pursuant to a plea agreement in which the Government promised, *inter alia:* (1) not to prosecute Baylin, his corporation, or any of its employees, for any of several enumerated offenses; and (2) to "remain silent" in connection with sentence. In July, 1981, Baylin was sentenced to three years in prison.

Baylin then moved, pursuant to 28 U.S.C. § 2255 (1976) and Fed.R.Crim.P. 35, to correct or reduce his sentence. The district court denied his motion. Baylin has appealed,[1] renewing the three principal contentions he advanced in the district court in support of his motion. First, Baylin asserts a breach of the substantive terms of the plea bargain, contending: (a) that his plea agreement required that if a sentence of over one year was imposed, he would serve no more than one-third of the sentence; (b) that the application of the U.S. Parole Commission Guidelines, 28 C.F.R. § 2.20 (1982), frustrated the agreement because neither party considered the effect the Guidelines might have had on the agreement; and (c) that, under Fed.R.Crim.P. 11(c), the judge who received the plea should have informed Baylin of the potential impact of the Guidelines on the duration of his incarceration. Second, he asserts that the district court improperly enhanced his sentence on the basis of the United States Attorney's bare promise not to prosecute certain charges,

even though: (a) the Government had already abjured possible prosecution of those charges and had claimed not to have any evidence to support them, and (b) the promise not to prosecute was included in the plea agreement at Baylin's own request, and solely for his protection. Third, Baylin contends that the Government breached its promise to "remain silent" when it allowed the probation officer preparing the presentence investigation ("PSI") report to have access to certain Internal Revenue Service ("IRS") investigative reports located in the United States Attorney's files and pertaining to Baylin's involvement in other tax violations. In addition, Baylin has asked that on remand his case be assigned to a different judge, arguing that the original sentencing judge would be unable to escape the influence of his allegedly improper decisions on resentencing. The Government disputes these contentions and argues that Baylin's failure to raise a contemporaneous objection to the claim that the Government breached its promise to remain silent to the contents of the PSI report constituted a waiver of that objection.

For reasons that appear below, we conclude that the substantive terms of Baylin's plea agreement were satisfied; that Rule 11 does not require the court to outline for a defendant the consequences of the Parole Commission Guidelines before accepting his plea; that the district court, in determining Baylin's sentence, drew an impermissible inference from the Government's agreement not to prosecute; and that while Baylin's failure to raise a contemporaneous objection to the contents of the PSI report did not constitute a waiver of that objection, the objection is without merit because the agreement to "remain silent" did not imply that the Government would close its files to the probation office. In light of these conclusions we remand for resentencing, but we reject Baylin's request that we order his case to be assigned to a different district judge on remand.

---

1. This Court has jurisdiction under 28 U.S.C. § 1291 (1976).

## I. The Proceedings in the District Court

On May 20, 1981, Baylin concluded a plea agreement with the United States Attorney for the District of Delaware. In return for Baylin's plea and his promise to assist the Government in investigating certain diversions of foreign shipments, the Government agreed: (1) not to prosecute Baylin for tax violations other than the one to which he pled; (2) not to prosecute him for any involvement in diverting foreign shipments or receiving stolen goods; (3) to incorporate certain provisions regarding parole into Baylin's sentence;[2] and (4) "to remain silent and to make no recommendation ... as to the nature and length of sentence, if any, to be imposed by the Court upon the Defendant, and ... not to oppose, or to take any position with respect to, any request which the Defendant may make for a particular sentence." (App. 34). Pursuant to that agreement, the Government filed a one-count information charging Baylin with a violation of 26 U.S.C. § 7206(2) (1976) (assisting a corporation in filing a false tax return) for the fiscal year ending April 30, 1976. Following a hearing on May 20, 1981,

the district court approved the plea agreement and accepted Baylin's plea of guilty.

On July 8, 1981, Baylin's counsel received a copy of the PSI report. Included in that report was information that the probation officer had obtained from the United States Attorney's files, including information from an IRS investigation concerning Baylin's involvement in tax violations for years other than 1976. Nonetheless, Baylin raised no objection to the contents of the report at that time or when he appeared for sentencing on July 22, 1981.[3]

At the sentencing hearing, Baylin sought a lenient sentence, relying primarily upon his extraordinarily fine reputation in the Wilmington community and his impressive record of community service. The court, however, rejected Baylin's request for leniency and imposed the maximum available sanction—three years in prison and a $5,000 fine. In its statement prior to sentencing, the district court observed that the case was "the worst [tax evasion] case that I have seen." The court acknowledged its reliance upon the information in the PSI report concerning other tax violations.[4] Finally,

2. The plea agreement contained the following provisions regarding parole:

Pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, in the event that the Court determines that a period of incarceration should be included in any sentence of the Defendant, then with respect to eligibility for parole:

(a) If the period of incarceration ordered by the Court is less than six months, the Court shall embody in its judgment and sentence a provision stating the period of incarceration that is appropriate;

(b) If the period of incarceration ordered by the Court is not less than six months but not more than one year, the Court shall embody in its judgment and sentence a provision under Title 18, United States Code, Section 4205(f) stating that the Defendant shall be released as if on parole after service of one-third of such period of incarceration notwithstanding the provisions of Title 18, United States Code, Section 4164; and

(c) If the period of incarceration ordered by the Court is more than one year, the Court shall embody in its judgment and sentence a provision under Title 18, United States Code, Section 4205(b)(2) stating that after incarceration, the Defendant shall be immediately eligible for release on parole and shall be

released on parole at such time as the United States Parole Commission shall determine. App. 34–35. Fed.R.Crim.P. 11(e)(1)(C) reads:

The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will ...

(C) agree that a specific sentence is the appropriate disposition of the case.

3. The sentencing judge was not the judge who had accepted Baylin's plea.

4. The court stated:

[T]his [tax evasion scheme] does not appear to be an isolated incident. The Internal Revenue Service investigation indicates that the same scheme was repeated for fiscal years ending April 1975 and April 1977, with the result that the corporate business expenses for those years were overstated by an additional better than half-million dollars, thereby causing an additional underpayment of taxes for those two years of better than $241,000. *United States v. Baylin,* No. 81–22, Tr. of Sentencing Hearing 15 (D.Del. July 22, 1981), App. 84.

the court took "judicial notice" that the agreement not to prosecute Baylin for receiving stolen goods or for diverting foreign shipments "reflect[ed] adversely" on Baylin's character.[5] In accordance with the plea agreement, the court made Baylin immediately eligible for parole under the terms of 18 U.S.C. § 4205(b)(2) (1976).[6]

Baylin began serving his sentence on August 8, 1981. In September, 1981, the Parole Commission reviewed his sentence and determined that he should not be paroled outside his guideline range (24–36 months). This decision effectively insured that Baylin would serve most of his three-year term.[7]

On November 13, 1981, represented by new counsel, Baylin filed the first of his two post-sentence motions. This initial motion urged two related grounds for relief. First, Baylin asserted that both he and the Government had intended that he should serve no more than one-third of any sentence imposed in excess of one year, and that this intention had been embodied in the plea agreement. Second, Baylin urged that the judge who had accepted his plea at his Rule 11 hearing had violated Rule 11(c)(1)[8] by failing to inform him that the Parole Commission Guidelines would most likely determine how long he would be incarcerated.

The district court rejected both contentions. *United States v. Baylin,* 531 F.Supp. 741 (D.Del.1982) *("Baylin I")*. The court first noted that by sentencing Baylin under section 4205(b)(2), thereby making him immediately eligible for parole, it had fulfilled the written plea agreement. Because Baylin had admitted at his Rule 11 hearing that the written agreement (quoted *supra* at note 2) embodied the entire agreement between him and the Government, the court concluded that its sentence satisfied the terms of the agreement. The district court rejected Baylin's second claim on the ground that Rule 11 requires the court to inform the defendant only of the maximum possible and mandatory minimum terms of years associated with his plea.[9]

Baylin then filed an amended motion raising two additional claims. First he argued that the Government, by giving the probation officer access to its files for compiling a PSI report, had violated its agreement to "remain silent." Second, he contended that the sentencing judge improperly inferred from the mere agreement by the Government not to prosecute that Baylin was involved in receiving stolen goods and diverting foreign shipments. Baylin again asked for resentencing, and requested that he be resentenced by a different judge.[10]

---

**5.** *Id.* at 16, App. 85.

**6.** Section 4205(b)(2) states in pertinent part:
 (b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year ... (2) ... may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

**7.** At oral argument counsel informed us that the Parole Commission had reviewed the case again and determined to release Baylin after he had served 24 months.

**8.** Rule 11(c) reads in pertinent part:
 Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law ....

**9.** The court acknowledged that prior to 1975, a majority of the courts of appeals, including the Third Circuit, had interpreted Rule 11 to require that a defendant be informed of any statutory provision making him or her ineligible for parole. But the court concluded that the cases so holding would not control Baylin's case, since he was in fact eligible for parole at any time, subject to the discretion of the Parole Commission.

**10.** Baylin did not request that his plea be vacated, despite the court's direction to do so on renewal of the motion. *See Baylin I, supra,* 531 F.Supp. at 755. Nor does he request that relief here, presumably because he has already served a substantial portion of his sentence and does not wish to risk still greater jeopardy by requesting vacatur of the plea agreement, which might if granted subject him to prosecution for additional offenses.

The district court did not decide whether the Government's agreement "to remain silent" required it to prevent any information in its files from reaching the sentencing judge by way of the PSI report. Instead the court concluded that the public policy expressed in 18 U.S.C. § 3577 (1976) (quoted *infra* at p. 1039) imposes a duty on the United States Attorney to make all information about a defendant available to a sentencing judge, and that any agreement by the Government to withhold the IRS material would therefore be void and unenforceable. *United States v. Baylin,* 535 F.Supp. 1145 (D.Del.1982) (*"Baylin II"*).

To justify its consideration of the Government's agreement not to prosecute as a factor in determining Baylin's sentence, the court relied upon the case law affording broad discretion to a sentencing judge to consider all information it deems appropriate short of misinformation or unreliable data. The court stated that the agreement "certainly gives rise to a permissible inference that Baylin *may* have participated in certain of these illicit activities," and that its conclusion that this was "a negative reflection on Baylin's character ... is not so inconceivable as to constitute 'misinformation of constitutional magnitude.' ..." *Baylin II,* at 1153–1154 (*quoting United States v. Tucker,* 404 U.S. 443,

447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). The court therefore denied Baylin's motion to correct sentence. A final order of dismissal was entered on April 7, 1982, and this appeal followed.[11]

## II. *Baylin's Failure to Raise a Contemporaneous Objection to the PSI Report*

The Government makes a threshold argument that Baylin waived his right to object to the presence of information from the United States Attorney's files in the PSI report when he failed to object prior to sentencing.[12] The Government notes that the PSI report was delivered to Baylin's counsel two weeks before sentencing, yet Baylin did not object to the contents of the report either in his Memorandum on Sentencing or at the sentencing hearing.[13]

 Rule 9(a) of the rules governing section 2255 proceedings[14] gives the district court discretion to dismiss a delayed motion for relief "if it appears that the government has been prejudiced in its ability to respond ...." Since the district court considered Baylin's claim on the merits, it apparently did not find a waiver of the claim. We cannot say that the court abused its discretion in so deciding.[15]

 Nor does the Supreme Court's recent decision in *United States v. Frady,* 456 U.S.

---

**11.** The court offered Baylin a second opportunity to amend his petition, to request that he be allowed to withdraw his plea. Baylin declined, and the court's order dismissing his complaint became final on April 7, 1982.

**12.** Although the Government's answer to Baylin's amended motion below characterized the issue in terms of laches, on appeal the Government argues in terms of waiver.

**13.** Baylin asserts in his reply brief that he did contest the material in the PSI report in his sentencing memorandum. The portion of his memorandum on which Baylin relies states:

We confess to being deeply troubled by [the pre-sentence report] because of its heavy emphasis on offenses with which Mr. Baylin has not been charged (suggesting he should be sentenced for these, too, despite no opportunity to defend himself against them, and despite no presentation of proof), [and] its reliance on investigative reports which have not been available to us....

Defendant's Memorandum Concerning Sentencing, *quoted in* Reply Brief at 18. This passage is simply not sufficient to raise the claim that the Government had breached its bargain.

**14.** Rule 9(a) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, 28 U.S.C. foll. § 2255 (1976).

**15.** The Government's reliance on *Diaz Torres v. United States,* 564 F.2d 617 (1st Cir.1977) is misplaced. In *Diaz Torres,* the defendant had waited five years before challenging the procedure under which he was sentenced. Baylin, in contrast, made his first motion three months after sentencing and soon after the Parole Commission reviewed his sentence, *see supra* page 1034. Although the issue that the Government claims Baylin has waived was not raised until Baylin amended his motion on February 26, 1982, seven months after sentencing, this was not so serious a delay that we find the district court in error for considering it.

152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), extending its holding in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to section 2255 motions, pose a jurisdictional bar. *Frady* requires that a defendant attacking a jury instruction for the first time on a section 2255 motion show both cause for his failure to object at trial and actual prejudice deriving from the error alleged. The Court's concern in *Frady* was to assure that criminal judgments would not be perpetually open to revision by collateral attack; the Court therefore mandated a more stringent standard for section 2255 motions than is necessary to raise a challenge on direct appeal. We think the *Frady* rationale is inapplicable to this case for two reasons. First, Baylin here challenges the imposition of a sentence after a guilty plea—a challenge for which a section 2255 proceeding is analogous to a direct appeal. This was not Baylin's "second appeal," but his first, and the finality considerations motivating *Frady* and its predecessors do not apply. *United States v. Corsentino,* 685 F.2d 48 (2d Cir.1982). Second, sentencing procedures, and especially sentencing hearings, need not conform to the procedural requirements that apply during a trial. During trial, the court and opposing parties are justified in expecting litigants to raise their objections at the procedurally correct moment, and in assuming that objections not so raised have been waived. The rules are certainly not so well marked at the sentencing stage of criminal proceedings. For both of the above reasons, we conclude that there was no jurisdictional bar to the district court's having entertained Baylin's claim.

### III. *The Alleged Departure from the Parties' Understandings Regarding Parole*

 Baylin has advanced a variety of contentions in support of his claim that the terms of his incarceration represented a "radical departure" from the parties' mutual understandings regarding parole and thus violated the plea bargain. He contends that both he and the Government "totally overlooked" the Parole Guidelines in the course of their negotiations; that the Government led him to believe that his parole determination would be "individualized," which he takes to mean that the Parole Commission would be directed to disregard its own Guidelines; and that he was advised by his counsel that he would serve no more than one-third of any term in excess of one year actually imposed. The district court rejected these contentions, *see Baylin I, supra,* 531 F.Supp. at 747–53, and we adopt its reasoning as our own.[16] Bay-

---

**16.** The court characterized Baylin's position as resting on "two fundamental misperceptions of law." 531 F.Supp. at 752. The first concerns the provision in the plea agreement stating that Baylin was to be sentenced in accordance with section 4205(b)(2). Since Baylin received a sentence greater than one year, and claimed to have expected that he would be released after he had served one-third of his sentence, the district court concluded that he therefore must have believed that section 4205(b)(2) so required. As the court properly pointed out, however, section 4205(b)(2) provides only for an immediate opportunity for review by the Parole Commission. Baylin was accorded this opportunity and the plea bargain was thus fulfilled.

Baylin's second misconception was that the court must give effect to an interpretation of the plea agreement, allegedly shared by the parties, "which is not disclosed to the Court in the Rule 11 hearing and is expressly contrary to the clear language of the plea agreement," *id.* Noting Baylin's statements at his Rule 11

colloquy that he understood the plea agreement, and that there were no further agreements not expressed in the written agreement, the court held that unexpressed understandings do not overcome express terms of a plea agreement where the defendant has acknowledged in open court that those express terms constitute the sole terms of his agreement with the Government. *See Martinez v. United States,* 411 F.Supp. 1352 (D.N.J.1976), *aff'd mem.,* 547 F.2d 1162 (3d Cir.1977); *Siegal v. New York,* 691 F.2d 620 (2d Cir.1982). Baylin's argument could only bear on the voluntariness of his plea, an issue that was not raised in the district court and is not before us.

Moreover, in Baylin's case, as the court noted, the understanding alleged was not within its power to effectuate, since parole decisions are exclusively committed to the Parole Commission. *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

Although the district court did not address Baylin's claim that his counsel did not advise him, at the time of his plea or thereafter, of the

lin further asserts that Rule 11 obliged the district judge, before accepting the plea, to explain the consequences of the Parole Guidelines. The district court correctly rejected this contention. Because of the importance of that issue to the trial judges in this Circuit, we summarize briefly why Rule 11 does not require a judge accepting a plea agreement to explain to the defendant his parole prospects under the Parole Commission Guidelines.[17]

Rule 11(c)(1) requires the court to advise a defendant of "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." This language generally has been held not to require an explanation of parole consequences.[18] As this court has expressly stated, "[u]nder ordinary circumstances, it should not become necessary for a trial court to include an explanation of probation or parole in its inquiry into the defendant's understanding of his plea." *Berry v. United States,* 412 F.2d 189, 192 (3d Cir.1969); *accord Roberts v. United States,* 491 F.2d 1236, 1238 (3d Cir.1974) (per curiam); *United States v. Garcia,* 636 F.2d 122, 123 (5th Cir.1981) (per curiam); *Hunter v. Fogg,* 616 F.2d 55, 61 (2d Cir.1980); *Strader v. Garri-*

impact of the Guidelines on the duration of his imprisonment, that claim must also be rejected. The record suggests that Baylin's counsel was aware of the potential impact of the Guidelines during the plea bargaining period. Before Baylin entered his plea, the Rule 11 judge mentioned the potential influence of the Guidelines to counsel, and counsel had previously indicated to the United States Attorney his familiarity with the statutes relating to parole. Moreover, upon entry of the plea, the U.S. Probation Office sent to counsel AO Form 337, which invites comment upon application of the Guidelines and explained in a letter accompanying this form:

> Counsel and the defendant should clearly understand (1) that the "Guidelines" are only guidelines, and (2) that the only application of the Guidelines which will effect the length of defendant's incarceration is that of the Parole Commission and not that of the officer who prepared the pre-sentence report. An incarcerated defendant's "salient factor score," his "offense severity rating," and his "guidelines" will be determined by the Parole Commission after he is committed.

App. 69. The PSI report contained a parole prognosis which Baylin's counsel, and Baylin himself, read. App. 123 (affidavit of Herbert Baylin). Indeed, even if there were nothing in the record suggesting that Baylin's counsel knew of the Guidelines, we have observed that such knowledge is presumed:

> We do not think failure to disclose the sentencing guidelines deprived [the defendant] of fundamental justice
> .... Since the guidelines should be familiar to anyone practicing criminal law in this Circuit and since they have been published in the Code of Federal Regulations, they were readily available to defense counsel.

*United States v. Bazzano,* 570 F.2d 1120, 1128 (3d Cir.1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). In the absence of a claim that his counsel was ineffective—a claim that Baylin has not raised—the fact that counsel did not inform Baylin of the consequences of the Guidelines is of no legal significance.

**17.** This Court has never addressed this question directly, although we did so obliquely in *Bazzano,* supra note 16. We note in passing that if Baylin's claim here were not embedded in the broader contention that the Government violated the terms of the plea bargain, we might well have no occasion to address the question here. In *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court held that a conviction based on a guilty plea is not subject to collateral attack merely because the court accepting the plea did not adhere strictly to the requirements of Rule 11 at defendant's Rule 11 hearing. The defendant in *Timmreck* claimed he had not been advised that he was subject to a mandatory "special parole" term, *see infra* note 20; the Court found no prejudice, however, since the term actually imposed, including a special parole term, was within the maximum term of which defendant was advised. Baylin does not allege a mere technical violation of Rule 11; he urges that violation as a subsidiary claim to the larger one that the terms of his agreement with the Government were abrogated because he received a sentence longer than he had bargained for. Under these circumstances, we do not think *Timmreck* is dispositive. In any event we decide against Baylin on the merits.

**18.** Rule 11 explicitly requires that courts explain any "special parole" consequences. "Special parole," which applies only to drug offenders pursuant to 21 U.S.C. § 841 (1976 & Supp. IV 1980), is imposed in addition to any term of years. It is thus entirely different from early release parole. Rule 11 requires that special parole effects be explained because they are cumulative to any prison term imposed, and they therefore effectively expand the maximum possible sentence for the offense.

*son,* 611 F.2d 61, 63 (4th Cir.1979); *Bell v. North Carolina,* 576 F.2d 564, 565 (4th Cir.), *cert. denied,* 439 U.S. 956, 99 S.Ct. 356, 58 L.Ed.2d 348 (1978); *Bunker v. Wise,* 550 F.2d 1155, 1158 (9th Cir.1977). This conclusion tracks the intent of the advisory committee that a judge need not inform a defendant of parole eligibility:

> Under the rule the judge is not required to inform a defendant about these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant. Currently, certain consequences of a plea of guilty, such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant.... Similar complications exist with regard to other, particularly collateral, consequences of a plea of guilty in a given case.

Advisory Committee Notes, 1974 Amendment, Fed.R.Crim.P. 11.[19] Indeed, as the district court noted, the Parole Guidelines present precisely the sorts of complications envisioned by the advisory committee:

> Although the Court might be able to calculate the "severity rating" of a defendant's offense under the Guidelines at the time a plea is accepted, the "salient factor score" could not be computed because this figure is based on information compiled during the pre-sentence investigation and is not available until some time after the Rule 11 proceeding. Thus, the Court could only describe the Guidelines in the most general terms to the defendant and

would be unable to supply the information which could prove most useful—the likely range of incarceration that particular defendant could expect to serve if the Guidelines are mechanically applied. Because of this inability to predict a probable range of confinement and because of the discretion vested in the Commission to suspend the application of the Guidelines in any event, the usefulness of a detailed discussion of parole possibilities would be questionable.

*Baylin II, supra,* 531 F.Supp. at 749. *See generally* Project, *Parole Release Decisionmaking and the Sentencing Process,* 84 Yale L.J. 810 (1975).

To mandate that explanations be given concerning any and all possible parole consequences in a Rule 11 proceeding would subject this Court to appeals each time the district court's prediction or the defendant's expectation of parole was not realized. Such a result is unreasonable and unnecessary. We reject Baylin's contention that Rule 11 requires such explanations.

## IV. *The District Court's Consideration of the Agreement Not to Prosecute*

### A. *The Applicable Law*

We begin with the proposition that a sentencing judge must have "the fullest information possible concerning the defendant's life and characteristics," *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) (footnote omitted), so that the punishment fits not only the crime, but the defendant as well.[20]

---

**19.** The cases that Baylin cites in support of his position, Appellant's Brief at 41, are distinguishable from the case at bar in two major respects. First, these cases were decided before the 1974 amendments to the rule made explicit what sentencing consequences were required to be explained to a defendant at his Rule 11 colloquy. The amended Rule 11 supersedes judicial glossing of the unamended rule. Second, the cases on which Baylin relies involved statutory provisions making the defendant *ineligible* for parole during the term of his incarceration. Baylin was eligible for parole from the beginning of his sentence; the failure of the Parole Commission to parole him cannot be equated with a statutory bar to any possibility for parole.

**20.** *Williams* was in part a response to "modern concepts individualizing punishment." *Id.* The modern criminal justice system attempts to do more than assess a measure of retribution from the defendant; it seeks as well to set a punishment that will both allow the defendant to re-enter society as a fully participating member and protect society from those offenders who present a serious continuing threat. *See generally* Federal Judicial Center, *Sentencing Aims and Policy* (1971). These goals require the fullest possible information about the offender.

Congress has codified this proposition in broad terms.

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3577 (1976 app.).

It is thus permissible for a sentencing judge to consider information that would be inadmissible for the purpose of determining guilt. *See Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (permissible to enhance sentence on basis of defendant's failure to cooperate with authorities in ongoing criminal investigations); *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (permissible for court to enhance sentence based on observation of defendant's demeanor during testimony at trial and conclusion that defendant had lied); *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (prosecutor's report may be considered although it is hearsay); *Williams v. New York, supra* (court may consider evidence that the defendant had committed other crimes of which he had not been convicted, as well as activities indicat-

ing " 'a morbid sexuality' " *id.* 337 U.S. at 244, 69 S.Ct. at 1081); *United States v. Garcia,* 544 F.2d 681 (3d Cir.1978) (hearsay permissible).[21]

While the case law reflects a belief that a sentencing judge must have access to a broad range of information, it also insists that such information be reliable. *See, e.g., Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (reversing denial of habeas corpus where the sentencing court had assumed that defendant had been convicted for several crimes when in fact he had been acquitted);[22] *Campbell v. United States, supra* note 21, 684 F.2d at 154 (upholding district court only after "review[ing] the record to ensure that there [was] a persuasive basis for the conclusions reached by the sentencing court"). Indeed, the Supreme Court in *Williams v. Oklahoma, supra,* only sanctioned the use of "*responsible* unsworn or 'out-of-court' information," 358 U.S. at 584, 79 S.Ct. at 426 (emphasis added); *cf. United States v. Grayson, supra,* 438 U.S. at 51, 98 S.Ct. at 2616 (approving use of the sentencing judge's own observations of defendant during trial and quoting with approval *United States v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir.1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975), characterizing such observations as "among the more precise and

**21.** The courts of appeals have not been grudging in their readings of the two *Williams* cases and § 3577. *See, e.g., United States v. Metz,* 470 F.2d 1140 (3d Cir.1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973) (approving consideration of indictments pending on other charges); *United States v. Sweig,* 454 F.2d 181 (2d Cir.1972) (approving consideration of evidence adduced to support counts of which the defendant had been acquitted; judge's observation of witnesses testifying under oath and subject to cross-examination is even more reliable than the hearsay approved in *Williams v. Oklahoma* ); *United States v. Campbell,* 684 F.2d 141, 154 (D.C.Cir.1982) (cautiously endorsing *Sweig* and noting that since "trial judge[s] can hardly avoid exposure to all the evidence that is presented during the course of a trial[, they] ought not be reprimanded for acknowledging the impact of the evidence presented during the trial unless the weighing in of such evidence confounds a just result"); *United States v. Mills,* 597 F.2d 693,

699 (9th Cir.1979) (approving consideration of defendant's history of drug abuse and "failure to achieve rehabilitation during prior prison terms"); *United States v. Wright,* 593 F.2d 105 (9th Cir.1979) (permitting consideration of character of defendant's associates when sentencing under the Youth Corrections Act).

**22.** Although the *Townsend* Court relied primarily on the fact that the defendant had not had counsel present during sentencing who "could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records," 334 U.S. at 741, 68 S.Ct. at 1255, the case has been read more broadly to stand for the proposition that "misinformation of constitutional magnitude" cannot inform a sentencing decision consonant with due process. *See United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

concrete" pieces of evidence a judge could consider).[23]

In a case similar to the one before us, the Ninth Circuit vacated a sentence and remanded for resentencing because the sentencing court had relied on an unsubstantiated charge, made to the probation officer by agents of the Federal Bureau of Narcotics and Dangerous Drugs and included in the PSI report, that the defendant was a large-scale heroin dealer. *United States v. Weston,* 448 F.2d 626 (9th Cir.), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1971). The *Weston* court assessed the probative value of this "unsworn evidence detailing otherwise unverified statements of a faceless informer that would not even support a search warrant or an arrest," *id.* at 631, and found it to be "almost nil," *id.* at 633. Although the court acknowledged that the allegations were not demonstrably false and that *Townsend v. Burke* thus did not preclude their use, it reasoned that some minimal indicium of reliability was necessary to preserve the defendant's right to due process.[24] This court has expressed a

similar position in dictum in *Moore v. United States,* 571 F.2d 179 (3d Cir.1978). In *Moore* the district court dismissed a habeas corpus petition without a hearing, although the petition alleged that petitioner's sentence had been enhanced on the basis of false information contained in the PSI report and that petitioner had not had an opportunity to challenge those statements before sentencing. We remanded for a hearing to determine the validity of these charges, remarking that, if they proved true, due process would require that petitioner be resentenced.

■ We find indisputable the proposition announced in *Weston* that, as a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability beyond mere allegation. We also endorse the correlative notion that such information must, either alone or in the context of other available information, bear some rational relationship to the decision to impose a particular sentence.

---

**23.** The Court in *Grayson, supra,* also remarked that since Rule 32(c) first established the use of PSI reports, "[a]ll amendments [to the Rule] have had one of two purposes: first, to increase judicial use of presentence reports in the sentencing decision and, second, *to assist the sentencing judge in assessing the accuracy of information contained in them.*" 438 U.S. at 48 n. 9, 98 S.Ct. at 2614 n. 9 (emphasis added).

**24.** *Cf. United States v. Metz, supra* note 21, 470 F.2d at 1142 (pending indictments have the indicium of reliability missing in *Weston*); *United States v. Conforte,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (sentencing court imposed additional penalties on defendant because he claimed fifth amendment privilege in refusing to disclose sources of income on tax returns; district court's conclusion that the only possible incrimination would be for filing false and fraudulent returns was without factual support and hence improper ground for enhancing sentence); *United States v. Harris,* 558 F.2d 366, 376 (7th Cir.1977) (reliability of hearsay information in PSI report, inserted by probation officer not involved in presentence investigation and in "marked disparity" to background information prepared by investigating probation officer, must be tested by hearing). The Supreme Court in *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967),

extended the sixth amendment right to counsel to cover sentencing hearings in order to avoid sentencing based on inaccurate information.

Similar concerns have been voiced by commentators and incorporated into various reform proposals. *See, e.g.,* Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Rule 32(c)(3)(D) & Commentary, *printed in* 91 F.R.D. 289, 347–48, 351–52 (1982); Model Penal Code §§ 7.03.–07 (1962); National Conference of Commissioners on Uniform State Laws, Model Sentencing & Corrections Act § 3–206 and commentary (1978) ("[I]t is reasonably likely that under current sentencing practices, courts ... take into account unproved and uncharged criminal behavior in imposing sentence. Under this Act, these uncharged criminal acts will have to be proved by substantial evidence."); R. Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 56–65 (1969); M. Frankel, *Criminal Sentences: Law without Order* (1972); Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613, 1630–40 (1980); Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals,* 89 Harv.L. Rev. 356 (1975).

## B. *The Facts in Baylin's Case*

In imposing the maximum sentence, the district court explicitly stated that the "grant of immunity" from prosecution for diverting foreign shipments and receiving stolen goods "reflect[ed] adversely upon Baylin's character." The court reasoned that "such a provision would not have been incorporated into the plea agreement if there was absolutely no danger that Baylin would somehow be linked to these additional offenses." [25] *Baylin II, supra,* at 1153.

We note preliminarily that the court's conclusion ignores common plea bargaining practice. A prosecutor's commitment not to file charges is frequently based, as apparently it was in this case, on the insufficiency or absence of evidence to support the charges. Plea agreements may include broad non-prosecution promises that go well beyond the scope of any available evidence. Such promises are readily granted by the Government because they deprive the Government of nothing of substance—particularly if the prosecutor himself believes that the suspect is not guilty of the other offenses.

Nor was the court's conclusion warranted by the plea agreement itself. [26] Nothing in the agreement suggests that the Government had any evidence to implicate Baylin in either of the schemes, to divert foreign shipments or to receive stolen goods. The Government made no representation to that effect, and the court never asked the Government if it had any such evidence. [27] It is not disputed that the provision was included in the plea agreement at Baylin's insistence and solely for his protection. Indeed, after Baylin's sentencing, the Government wrote a letter on his behalf to the Parole Commission in which it termed the district court's action "unfortunate" and urged that "no negative inferences be

**25.** At the sentencing hearing, the Court made the following remarks on this part of the plea agreement:

> The Court also takes note of the fact that the Government has agreed in the plea agreement that you will not be prosecuted for any other tax offense which you have committed, except for the one which you entered a plea of guilty to, and that you will not be prosecuted for your involvement in diverting foreign shipment of goods or for any offense committed by you relating to the receipt of stolen goods.
>
> The Court, of course, may take judicial notice that these grants of immunity for other possible federal violations reflect adversely upon your character.

App. Tr. at 15–16, *reprinted in* 84–85.

**26.** The plea agreement provided, in pertinent part:

> 5. The United States, by and through the United States Attorney's Office for the District of Delaware, hereby commits itself and promises to decline prosecution of any and all offenses committed by the Defendant (except that offense specifically set forth in Count I of the Information) in any manner concerning, or relating or incident to, the following:
>
> (a) Any criminal offense relating to a violation of the tax laws of the United States involving any year in or for which a tax return has been filed by the R. Baylin Company or the Defendant as of the date of this

Agreement (except that offense specifically set forth in Count I of the Information);

> (b) Any offense committed by the Defendant relating to his involvement in 'diverting,' including involvement in the activities of William Pollack and his related companies in connection with the 'diverting' of foreign shipments; and
>
> (c) Any offense committed by the Defendant relating to the theft or receipt of, or dealings with, stolen goods.

App. 36–37.

**27.** The sealed PSI report was included as part of the record on appeal. We read it just before argument and noted that it reported a statement of a Mr. Schindler suggesting that Baylin was involved in receiving stolen goods. (At Baylin's Rule 11 hearing, the Government referred to Mr. Schindler as a Government witness.) This evidence, while imprecise and conclusory, might have justified the district court's increasing Baylin's sentence, *see Williams v. Oklahoma, supra* pp. 1039–1040, but the court failed to mention it, either at the sentencing hearing or in its opinion denying Baylin's second motion. Nor did the Government refer to, much less rely upon, this evidence, either in its brief or at oral argument. Because the district court chose to rely squarely on its consideration of the bare plea agreement, and because the Government took the position in its letter, quoted *infra* note 28, that such reliance was "unfortunate," we proceed as if the Schindler statement does not appear in the PSI report.

drawn by the Commission concerning these provisions of the plea agreement." [28]

■ In short, the district court inferred Baylin's culpable involvement in illegal activities not from hearsay evidence, or from an indictment, but from a bare Government promise not to prosecute. It is impermissible in sentencing to rely upon such an inference, since it does not meet the minimum reliability standard we have enunciated. Correlatively there is no rational relationship between the information actually available to the court (the fact that the Government had promised to forego prosecution) and its decision to enhance Baylin's sentence. Since "we are not convinced that an increment of prison time was not added" to Baylin's sentence on the basis of this inference, we must remand for resentencing. *See Poteet v. Fauver,* 517 F.2d 393, 398 (3d Cir.1975).[29]

### C. *Baylin's Request for Resentencing Before a Different Judge*

■ Baylin argues that we should remand this case to a different judge for resentencing because the judge who sentenced him is unlikely to be able to erase from his mind the inferences we have held to be impermissible. Although our concern in this case is to insure that Baylin receives an impartial sentencing hearing and that he is sentenced only on the basis of reliable evidence, we begin our analysis with a presumption that assignment of cases is primarily the province of the district court—a

---

**28.** The letter, which is part of the record on appeal, *see* App. 115–16, was addressed to the U.S. Parole Commission, Southeast Regional Office; the Warden, Federal Correctional Institute, Lexington, Kentucky; and Mr. Robert Jefferson, ANTEUS Unit, Federal Correctional Institute, Lexington, Kentucky. It was signed by William C. Carpenter, Jr., Assistant United States Attorney, District of Delaware. It reads as follows:

Gentlemen:

It is my understanding that Mr. Baylin is scheduled to appear before the United States Parole Commission on September 30, 1981 concerning his eligibility for parole. As such, our office feels it is appropriate to bring several matters to the Commission's attention concerning Mr. Baylin and the plea agreement that was entered into with the United States.

Paragraph (3)(c) of the plea agreement, as approved by the Court, requested that the Court sentence Mr. Baylin under the provisions of Title 18, United States Code, Section 4205(b)(2). This provision was included in the agreement to provide the Parole Commission with complete flexibility and latitude in determining the appropriate parole eligibility of Mr. Baylin, regardless of the established parole guidelines. It is our request that the spirit and intent of the agreement be honored by the Commission, and that, in Mr. Baylin's case, the guidelines not be mechanically applied.

The plea agreement also indicated that Mr. Baylin would not be prosecuted criminally for his activities involving the theft, receipt or dealing in stolen goods. It should be clear, however, that the United Sttaes [sic] never intended to procure any criminal charges in this area against Mr. Baylin due to insufficient evidence. This provision was added to the agreement as a protection to Mr. Baylin without objection by the United States.

The agreement further calls for the cooperation of Mr. Baylin in this District's ongoing investigation of the illegal diversion of foreign shipments into the United States, including the activities of a Mr. William Pollak. Mr. Baylin has cooperated with this office and will potentially be an important witness in any subsequent criminal prosecution that may arise in this area. Mr. Baylin was not a target of this investigation, and no criminal charges were lodged against him or his company.

We believe that, in sentencing Mr. Baylin, the Court's emphasis on the stolen goods and diverting aspect of the plea agreement, was unfortunate. The United States would request that no negative inferences be drawn by the Commission concerning these provisions of the plea agreement when it is considering the parole eligibility of Mr. Baylin.

If the Commission has any questions concerning the investigation, prosecution or plea agreement, please do not hesitate to contact our office.

**29.** Although *United States v. Grayson, supra,* effectively overruled *Poteet* on the question whether the judge's observation of defendant's demeanor at trial is sufficiently reliable to be considered at sentencing, *Grayson* did not disturb *Poteet's* position that a defendant need not show an *express* enhancement based on the unreliable information in order to demand resentencing.

province we will not invade without significant justification.[30]

■ Baylin urges us to adopt a test promulgated by the Second Circuit in *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc) (per curiam), to decide this question. The *Robin* factors are:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

We need not decide here to adopt or reject this standard,[31] for even assuming its applicability, we conclude that Baylin's arguments do not satisfy its requirements.

Turning to the first *Robin* criterion, we cannot accept Baylin's argument that the district court will be unable to put impermissible inferences out of its mind. It is not enough to say, as Baylin does, that a sentencing judge who commits legal error is likely to do so again on remand. To accept this proposition is to conclude that the task of judging is an impossible one. It is no more difficult for a judge to discount an impermissible factor in sentencing than to ignore evidence at trial that was heard and excluded on proper objection. The judge here sentenced Baylin and denied his section 2255 motion under a misapprehension of law. This misapprehension now stands corrected. The court on remand will be in no different position than it would have

been had it originally decided correctly that it could not consider the plea agreement as a negative reflection on Baylin's character. It is reasonable to expect that in future cases it will eschew the inference we hold to be impermissible; we see no reason not to expect it to do so in this case as well.

Baylin's argument also falls short of satisfying the second *Robin* factor. He suggests that the court's imposition of the maximum sentence "gives at least the appearance of very strong hostility to the defendant." Appellant's Br. at 50. We do not agree. Bias is not shown by the mere fact of a maximum sentence. As for the third consideration, while there is little duplication of effort involved in remanding to a different judge in the context of a guilty plea (as opposed to a lengthy trial), this criterion alone is not enough to overcome the other factors favoring remand to the original judge. We therefore deny Baylin's request that we order reassignment to a different district judge on remand.

## V. The Government's Obligation to Remain Silent

■ Baylin's final claim is that the Government breached its agreement "to remain silent" by allowing the probation officer to examine its investigative files in preparing the PSI report. He argues that any transmission of information from the United States Attorney's Office to the court, direct or indirect, violates the Government's pledge of neutrality. In support of this argument, Baylin points to the district court's acknowledgement that there would have been a clear violation of the plea agreement if the Government's lawyers had mentioned the disputed information at the

---

**30.** It is the standard practice in the district courts in this circuit that a case on remand is assigned to the judge who originally heard it. Occasionally, however, this Court has exercised its supervisory power to reassign cases on remand. *See, e.g., Lewis v. Curtis,* 671 F.2d 779 (3d Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Johnson v. Trueblood,* 629 F.2d 302 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981); *Poteet v. Fauver,* 517 F.2d 393 (3d Cir.1975).

**31.** The Ninth Circuit adopted the *Robin* test in *United States v. Arnett,* 628 F.2d 1162, 1165 (9th Cir.1979), and reaffirmed its adherence to the test in *United States v. Larios,* 640 F.2d 938, 943 (9th Cir.1981), and *United States v. Doe,* 655 F.2d 920, 929 (9th Cir.1980). The Sixth Circuit adopted the *Robin* test in *Bercheny v. Johnson,* 633 F.2d 473, 476–77 (6th Cir. 1980).

sentencing hearing, *Baylin II, supra,* at 1150, and contends that the release of investigative files to the probation officer is indistinguishable from such an oral presentation.[32] Baylin relies principally upon *United States v. Cook,* 668 F.2d 317 (7th Cir. 1982), where the court held that a promise " 'not [to] offer anything at all in aggravation' " was violated when the Government allowed the probation officer routine access to its files. The court held that to accept the Government's position "would render [its] promise practically meaningless since it would allow the Government to accomplish indirectly what it had promised not to do directly." *Id.* at 321.

Baylin's contention requires us to balance countervailing policies. On the one hand, integrity in the plea bargaining process demands that the Government be scrupulous in honoring its agreements. On the other hand, integrity in the sentencing process demands that the fullest possible record concerning the defendant be made available to the sentencing judge. The task of resolving conflicting policies is perhaps the most difficult of judicial duties. We do not perform this task in a vacuum, however, but only against the background of the record. The Seventh Circuit found the first of these policies more compelling in the context of the record available in *Cook;* on the present record, we accord these counter-

vailing policies somewhat different weight than did the Seventh Circuit.

We note initially that Baylin's plea agreement seems to us to be narrower than the Government's promise in *Cook.* The plea agreement in this case required the Government "to remain silent and to make no recommendation ... as to the nature and length of sentence, if any, to be imposed by the Court upon the Defendant, and ... not to oppose, or to take any position with respect to, any request which the Defendant may make for a particular sentence." App. 34. In contrast to the language at issue in *Cook,* we think this promise focuses on the sentencing hearing and the Government's presentation at that hearing. Indeed the Seventh Circuit was at pains to distinguish *United States v. Avery,* 621 F.2d 214 (5th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981), where the Fifth Circuit held that a Government promise "to 'make no recommendation and stand mute' at sentencing," *id.* at 216, did not require the Government to close its files to the probation officer preparing a PSI report. The *Cook* court thought that the language construed in *Avery* was much narrower than the language with which it was faced. Since we think that the language in Baylin's plea agreement is closer to the *Avery* agreement, *Cook* provides confirma-

---

**32.** This case is immediately distinguishable from prior cases in this circuit involving alleged breaches of similar agreements. In *United States v. Crusco,* 536 F.2d 21 (3d Cir.1976), we remanded to allow withdrawal of a guilty plea because the Government, at the sentencing hearing had responded to the defendant's plea for leniency by attacking defendant's character, despite the fact that it had agreed to abstain from taking a position on sentencing. In the case before us, however, the Government honored its commitment to remain silent at the sentencing hearing. Neither is our decision in *United States v. Miller,* 565 F.2d 1273 (3d Cir. 1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978) (per curiam), germane. In *Miller,* we held that a Government promise "to make no recommendation as to sentence" *id.* at 1275, did not preclude the Government from responding to the defendant's remarks.

Although Baylin has also brought to our attention the Second Circuit's recent decision in

*United States v. Corsentino, supra,* that case is distinguishable as well. The Government there had promised to " 'take no position at sentence,' " but nonetheless wrote a memorandum on sentencing and elaborated at the sentencing hearing on points made in the memorandum. The "unmistakeable import" of the Government's statement was "to urge the District Judge to impose a substantial sentence." 685 F.2d at 49. Further, when the District Judge asked the Government for its views on parole eligibility, the Government stated its opposition to eligibility before the defendant had served one-third of his sentence. Reading the agreement as narrowly as possible, the court still found the Government to have violated its agreement by urging that a minimum period of time be served before parole eligibility. Here, by contrast, the Government made no presentations to the court and did not in any way indicate a sentencing preference.

tion for our interpretation of the Government's promise here.[33]

Aside from the differences in language between the plea agreements at issue here and in *Cook,* we think that the manner in which information is presented to the court bears on the question whether the Government has maintained its neutrality. Here the information was gathered in the course of routine procedure; the probation officer invariably reviews the investigative files of the United States Attorney in preparing PSI reports.[34] Baylin does not contend that the communications between the United States Attorney's Office and the Probation Office in this case were other than routine, or that the Government manipulated its files to place certain information before the probation officer. Nor does he assert that any attempt was made to influence the probation officer's evaluation of the file. Under these circumstances we see a difference between the United States Attorney offering the information at the sentencing hearing, and the probation officer obtaining it from the investigative file: the former strongly suggests that the Government

deems the information worthy of the court's consideration; the latter, and any consequent decision by the probation officer to include the information in the PSI report, does not reveal a Government position on its importance. The Government cannot be said to have violated its promise to remain neutral in acting as a mere conduit, complying with a routine request for access to its files. The choice of relevant information in this case was the probation officer's, not the Government's.

The district court concluded that the public policy embodied in 18 U.S.C. § 3577, *supra* at 20, completely precludes courts from enforcing a plea agreement if enforcement would require excising information from the PSI report. Since such excision was the only remedy Baylin was willing to accept,[35] the court concluded that it did not need to determine the agreement's scope. We agree that section 3577 imposes a duty on the United States Attorney, as an officer of the court, to provide the court with all available information that might assist in sentencing.[36] However, we need not decide

**33.** Our construction of the plea agreement is further confirmed by Baylin's course of conduct. He was provided with a copy of the PSI report two weeks before the sentencing hearing, and filed a memorandum commenting on that report. Nowhere in the memorandum did Baylin challenge the inclusion of information from the Government's investigative files as a violation of the plea agreement. Nor did Baylin raise the question either at the sentencing hearing or in his first motion to reduce his sentence. He raised the claim for the first time in his amended motion, some seven months after the sentencing hearing. Although we have determined that this delay is not serious enough to constitute waiver, *see supra* at pp. 1036–1037, Baylin's course of conduct leaves us with little doubt that he did not consider the Government to have breached the plea agreement—and Baylin has not provided us with a better explanation for his failure to object.

**34.** Fed.R.Crim.P. 32(c) requires the probation officer to conduct a presentence investigation, the results of which are to be reported to the court. Rule 32(c)(2) states that "[t]he report ... shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstance affecting his behavior as may be helpful in imposing sentence...." Administrative Office of The United States Courts, Divi-

sion of Probation, *The Presentence Investigation Report* (1978), prepared by the Probation Division of the Administrative Office, sets out the standard procedure for compiling this report. Under the standards announced in that monograph, the probation officer is to obtain both the ("official") prosecution and defense versions of the offense. Probation officers are referred to the United States Attorney's files for much of the information constituting the official version. *Id.* at 1034–1035; *see also* Fennell & Hall, *supra* note 24, at 1624 n. 43 ("To obtain the official version of the offense, the probation officer reviews the entire case file and then discusses specific points with the Assistant United States Attorney.").

**35.** In amending his motion, Baylin ignored the court's directive that his amended motion pray that he be allowed to withdraw his plea as a remedy. *See Baylin I, supra,* 531 F.Supp. at 755; *Baylin II, supra,* at 1147 n. 1.

**36.** *See United States v. Block,* 660 F.2d 1086 (5th Cir.1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982); *United States v. Avery, supra;* American Bar Association Standards for Criminal Justice § 3–6.2 (1980); *cf. United States v. Cook, supra,* 668 F.2d at 320 (entertaining "substantial doubt"

whether the existence of such a duty ever permits an agreement by the Government that would in any way limit the flow of information to the sentencing judge. Where, as here, it is unclear that a plea agreement requires the Government to close its files to a probation officer compiling a PSI report, the policy subsumed in section 3577 deters us from concluding that it does.[37]

We conclude that the Government had no obligation under the terms of the plea agreement to close its files to the probation officer, and that the Government's neutrality was not impaired by the manner in which the information from those files was presented to the court. The district court is free on remand to consider the entire PSI report. Under the circumstances, however, it is desirable that the Probation Officer prepare an updated PSI report containing information about Baylin's personal and family situation and his institutional record; sentence should always be imposed on the basis of current information.

The judgment of sentence of the district court will be vacated and the case remanded for resentencing. The mandate shall issue forthwith.

ADAMS, Circuit Judge, concurring.

Although I concur with the majority, I write separately to emphasize what I consider to be the central holding of the Court today: namely, that a district judge may not, when sentencing a defendant, rely on inferences of possible participation in other crimes based solely on the government's promise not to prosecute for such other crimes. Due process demands that there be

something justifying dependence on a particular factor before a judge may make that factor a basis, even in part, of a sentence.[1] Because a promise not to prosecute, without more, is not a reliable indicator of criminal involvement, it cannot be used as the predicate for an adverse evaluation of the defendant's character. This seems particularly so here, since the letter from the prosecutor to the Parole Commission made this abundantly clear. Inasmuch as it appears from the record that the district court in this case based its sentencing decision partially on the government's promise not to prosecute for certain alleged crimes, I agree that the matter should be remanded so that the defendant may be resentenced.

---

that "the Government could lawfully withhold relevant information from the sentencing court" (footnote omitted)).

**37.** In the future, the United States Attorney can avoid the dilemma presented by this case by avoiding *Cook*-type plea bargains, or indeed any plea bargain that might give rise to the argument that the Government has obligated itself to close its investigative files to the probation officer. As we have done before, "we again must remind the Government of the semantic pitfalls inherent in plea bargaining," *United States v. Miller, supra* n. 32, 565 F.2d at

1275, and we urge the Government to make every effort to draft unambiguous plea agreements. *See also United States v. Ligori,* 658 F.2d 130, 134 n. 3 (3d Cir.1981) (Higginbotham, J., concurring) (reporting intention of United States Attorney to clarify in future plea agreements whether the Government reserves the right to oppose a Rule 35 motion).

**1.** *See Moore v. United States,* 571 F.2d 179 (3d Cir.1979); Note, *A Proposal to Ensure Accuracy in Presentence Investigation Reports,* 91 Yale L.J. 1225 (1982).